In re CARROZZELLA
& RICHARDSON,
Debtor.

Michael J. Daly, Trustee, Plaintiff,

v.

Francis J. Simeone and Josephine
Simeone, Defendants.

Bankruptcy No. 95–31231.
Adversary No. 97–3019.

United States Bankruptcy Court,
D. Connecticut.

Dec. 11, 2001.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Robert G. Wetmore, Robert G. Wetmore P.C., Yalesville, CT, for Defendant.

## MEMORANDUM OF DECISION ON COMPLAINT TO AVOID PREFERENTIAL TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

This adversary proceeding follows in the tragic wake of a pattern of fraud perpetrated by the Debtor's principals. Due to gross mismanagement and misappropriation of funds by its principals, the Debtor has ended up hopelessly insolvent and in liquidation in this Court. The present Defendants, like scores of other individuals over a period spanning two decades, placed significant personal funds in the Debtor's care. In an effort to create some measure of distributional equality among innocent fraud victims, the Plaintiff–Trustee has commenced, *inter alia,* a series of avoidance actions against individuals, such as the present Defendants, who withdrew funds from the Debtor within the preferential transfer "look-back window" of Bankruptcy Code Section 547(b)(4).

As detailed in this Memorandum of Decision, the unique facts underlying this adversary proceeding support the Trustee's avoidance and recovery of the transferred funds.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F).

### III. FACTUAL BACKGROUND

This proceeding is before the Court for decision after trial. The Court's findings of fact are derived from the following sources: (i) the parties' "Stipulation to Facts and the Admissibility of Documents as Full Exhibits", (ii) the evidentiary record at trial, and (iii) the Court's independent examination and noticing of the official record of the instant case and adversary proceeding.

On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition (hereafter, the "Petition") was filed in this Court against the Debtor, Carrozzella & Richardson, seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly, was appointed as trustee of the Debtor's Chapter 7 bankruptcy estate.

The Defendants, Francis J. Simeone (hereafter, "Francis") and Josephine Simeone (hereafter, "Josephine"), were two of many individuals who from time to time placed personal funds with the Debtor. However, because the evidentiary record in this proceeding was not developed with adequate precision, the nature and history of their financial dealings with the Debtor are somewhat murky. Despite the state of

the record, the Court finds the following facts.

Attorney John A. Carrozzella (hereafter, "Attorney Carrozzella") first provided legal representation for the Defendants in the 1970's; and it appears that he then represented Josephine, commencing in 1992 or 1993, in connection with her fiduciary duties with respect to her mother's estate.[1] The Defendants' depository relationship with the Debtor appears to have begun in 1993, growing out of Josephine's fiduciary duties. Josephine's mother held certain bonds, which Attorney Carrozzella agreed to liquidate for Josephine. The proceeds were deposited with the Debtor (hereafter, the "Fiduciary Deposit"), and an "account" was established thereby (hereafter, the "Account"). Over subsequent months, Josephine and/or Francis made additional deposits from their own funds (hereafter, the "Non–Fiduciary Deposits"), including the proceeds of the liquidation of certain certificates of deposit. The Fiduciary and Non–Fiduciary Deposits are hereafter collectively referred to as the "Deposited Funds".

All correspondence from the Debtor regarding the Account[2] was addressed to "Mr. Francis J. Simeone and Mrs. Josephine Simeone or the Survivor thereof for the Benefit of Debrah Gejda". Computer-generated accounting sheets attached to these letters were titled, "Francis J. Simeone and Josephine Simeone" through November 1994, and thereafter titled, "Francis J. Simeone and/or Josephine Simeone, for the Benefit of Debrah Gejda".[3]

Within the 90 days preceding the Petition Date a withdrawal was processed from the Account via the following transaction: Check No. 857 (hereafter, the "Check"), in the amount of $5,000.00, dated May 11, 1995, drawn on the "Carrozzella and Richardson Clients Fund Account", and made payable to the order of "Francis J. Simeone and/or Josephine Simeone" (hereafter, the "Transfer"). The Check was endorsed in blank by Josephine alone, and subsequently endorsed by Harte Chevrolet to the order of Shawmut Bank for deposit.[4] The Check finally cleared the drawee bank on May 15, 1995.

The Debtor's records indicate that at all times after the Transfer, the Account maintained a balance of not less than $120,000.00. Those funds have never been paid to the Defendants, individually or jointly, personally or in a fiduciary capacity.

At a point in time not determined in this proceeding, the Debtor became involved, through the fraudulent activity of Attorney Carrozzella, in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with a debtor by later depositors are secretly and illicitly utilized to pay returns, and repay principal, to earlier depositors. At all times relevant to this adversary proceeding, the Debtor commingled the Deposited Funds in a single bank account together with, *inter alia*, (i) funds deposited with the Debtor by other entities, (ii) income derived from investments, and (iii) the

---

1. It appears that this was *not* a decedent's estate; but that Josephine's duties may have been in the nature of a conservatorship.

2. Francis testified that the Defendants established two "accounts" with the Debtor; yet there was no documentary support for that assertion.

3. The Court assumes, without finding, that Debrah Gejda is Josephine's mother.

4. The subject funds were utilized in the purchase of a Chevrolet Blazer for the personal use of Francis and/or Josephine.

general revenue of the legal practice of the Debtor.[5]

## IV. DISCUSSION

The Plaintiff–Trustee seeks to avoid the Transfer under the authority of Bankruptcy Code Section 547, which provides in relevant part as follows:

\*　　\*　　\*　　\*　　\*　　\*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of *an interest of the debtor in property*—

　(1) to or for the benefit of a creditor;

　(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

　(3) made while the debtor was insolvent;

　(4) made—

　　(A) on or within 90 days before the date of the filing of the petition; . . . and

　(5) that enables such creditor to receive more than such creditor would receive if—

　　(A) the case were a case under chapter 7 of this title;

　　(B) the transfer had not been made; and

　　(C) such creditor received payment of such debt to the extent provided by the provisions of this title. . . .

11 U.S.C. § 547(b) (1995) (emphasis supplied).

The Plaintiff bears the ultimate burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer as set out in subsection (b) of Section 547. *See* 11 U.S.C. § 547(g) (1995). The Court concludes that the Plaintiff has met that burden, at least as to Josephine. The Transfer was made from the Debtor's bank account to Josephine [6] within the 90 days prior to the Petition Date, at a time when, as the parties have stipulated, the Debtor was insolvent. At all relevant times Josephine was a "creditor" of the Debtor, in that she had a "right to payment" of the balance in the Account.[7] *See* 11 U.S.C. § 101(5), (10) (1995). The Court further concludes that the Debtor was liable to Josephine in her personal capacity in an amount exceeding $5000.00,[8] and therefore, the Transfer was made on account of an antecedent "debt". *See* 11 U.S.C. § 101(12) (1995). Finally, the Transfer enabled Josephine to receive more than she would receive in a hypothetical liquidation of the Debtor under Chapter 7 had the Transfer not been made.

Despite the foregoing conclusions, the Defendants argue that the Transfer did not consist of "an interest of the debtor in property", as required by the prefatory language of Section 547(b), because the funds transferred were previously placed

---

**5.** The Plaintiff's expert witness, Richard Finkel, CPA—a forensic accountant—testified credibly that separate bank accounts were not established for funds placed with the Debtor by individual depositors. Indeed, Mr. Finkel described the banking structure of the Debtor as "one big pot", into which was deposited all of the Debtor's receipts and revenue.

**6.** Although the Check was made payable to Josephine and/or Francis, because it was endorsed by Josephine alone, she became the sole transferee.

**7.** In light of the fiduciary nature of the Fiduciary Deposits, Josephine may not have had a personal right to payment of the *entire* balance of the Account. However, the Court concludes that she had a right to payment of some (≥$5000.00) of the balance, owing to her Non–Fiduciary Deposits.

**8.** *See* fn. 7.

with and/or held by the Debtor *in trust* for the Defendants' benefit.

■ It is axiomatic that funds held in trust by one entity for another do not constitute the beneficial property of the former. Rather, title to the trust property is held by the former *as trustee* for the benefit of the latter.[9] Consequently, property transferred by a trustee to its beneficiary pursuant to, or consistent with, a trust is not voidable as a preferential transfer should the trustee later become a bankruptcy debtor.[10] Thus, a court must determine whether the course of conduct between a debtor and the alleged preference recipient created a trust relationship—expressly or by operation of law—with respect to the subject property. That inquiry in this proceeding ultimately asks whether the funds comprising the Transfer were trust funds at the time of their transfer from the Debtor to the Defendants.

## A. Creation of an Express Trust.

■ An individual "settlor" can declare an express trust by making an *inter vivos* transfer of property to a "trustee" and "manifesting" an intention to create a trust. *See* Restatement (Second) of Trusts §§ 2, 23 (1959); *cf. Marzahl v. Colonial Bank & Trust Co.*, 170 Conn. 62, 64, 364 A.2d 173 (1976); *Goytizolo v. Moore*, 27 Conn.App. 22, 25, 604 A.2d 362 (1992). A trust may be created even though the settlor does not use the word "trust". Restatement (Second) of Trusts § 24 cmt. b (1959). And although the intention of the

settlor must be "externally expressed", *id.* at § 24 cmt. c, it need not be evidenced by words, whether written or spoken. Rather, it may be discerned solely from the conduct of the settlor in light of all the circumstances. *Id.* at §§ 4 cmt. a, 24(1). In litigation such as that at bar, all circumstances throwing light upon a settlor's intention are relevant to the interpretation of her words and/or conduct. *See id.* at § 24 cmt. b.

■ The Court concludes from the entire evidentiary record of this proceeding, and in particular, from the testimony of Francis, that the Defendants manifested no intention to create an express trust at the time they made the Non–Fiduciary Deposits. In analyzing the circumstances surrounding the Defendants' placement of such funds with the Debtor, the Court notes that the Defendants never stated, orally or in writing, that they intended to create a trust with the Non–Fiduciary Deposits. Nor is there conduct or circumstantial background from which the Court might infer that the Defendants intended to create, or assumed they were creating, a trust. Finally, although there is evidence that Josephine had an attorney-client relationship with Attorney Carrozzella in relation to the Fiduciary Deposits, the Non–Fiduciary Deposits were never held by the Debtor as the proceeds, product, or subject of any of its legal work.[11]

■ What the evidence demonstrates with regard to the Non–Fiduciary Deposits is not the creation of a *trust* relation-

---

9. A trust is generally described as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person...." Restatement (Second) of Trusts § 2 (1959).

10. *See, e.g., Daly v. Deptula, et al.*, 255 B.R. 267 (Bankr.D.Conn.2000).

11. Consequently, the Defendant's express trust argument cannot be aided by Connecticut Rule of Professional Conduct 1.15(a), which establishes the general rule that whenever an attorney receives property from a *client*, he holds it in trust.

ship, but rather, a type of *banking* relationship. On direct examination, Francis admitted that he viewed the Deposited Funds as a "deposit" account. A deposit account with a banking institution does not generally create a trust relationship unless it is explicitly denominated as such. *See e.g.,* 10 Am.Jur.2d *Banks* § 339 (1963). Rather, a deposit creates a *debt* owed by the bank to the depositor. *Id.* It is the potential insecurity of this non-trust arrangement which has spawned much present-day banking regulation, including the provision of deposit insurance through entities such as the Federal Deposit Insurance Corporation. The Defendants knew, or should have known, that the funds they placed with the Debtor were uninsured. With eyes wide open, they forewent the relative security of an insured account with a banking institution.

**B. Implication of a Constructive Trust**

Failing to establish the creation of an *express* trust relationship at the time the Deposited Funds were placed with the Debtor, the Defendants attempt to have this Court retroactively imply a *constructive* trust in the Deposited Funds based upon the Debtor's alleged fraud in the solicitation of those funds. This alternative tact possesses a solid legal basis in this Circuit. *See Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88 (2d Cir.1989) (recognizing the existence of a constructive trust under New Jersey law, and applying that trust retroactively to exclude from a bankruptcy estate property in which a creditor's security interest had

been lost through the pre-petition misconduct of the debtor).[12] Whether the grounds for a constructive trust existed at the time the Deposited Funds were placed with the Debtor, however, is purely a matter of state law. *Id.*

▮ The implication of a constructive trust in this case is governed by Connecticut common law. Although Connecticut case law does not provide clear precedent under the specific facts of this adversary proceeding, the Connecticut Supreme Court has articulated generally the circumstances under which a constructive trust will be recognized:

> ... a constructive trust arises... against one, who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not, in equity and good conscience, hold and enjoy.

*Zack v. Guzauskas,* 171 Conn. 98, 103, 368 A.2d 193 (1976) (*quoting* 76 Am.Jur.2d, *Trusts* § 221). More specifically, commentary to the Restatement of Trusts points out that if one entity induces another by fraud to deposit funds with it, then it becomes a constructive trustee of the money deposited. Restatement of Trusts (Second) § 12, cmt. I (1959). Thus, if the Defendants here were able to demonstrate that certain critical deposits were fraudulently solicited from them, they might well be deemed to be the beneficiaries of a

---

**12.** In at least one other Circuit federal courts decline to give retroactive effect to findings of circumstances giving rise to a constructive trust, at least when assessing the asset composition of a bankruptcy estate relative to the constructive trust claim of a third party. *See, e.g., XL/Datacomp v. Wilson (In re Omegas*

*Group, Inc.),* 16 F.3d 1443 (6th Cir.1994). That Court's view springs from its belief that under common law a constructive trust is not really a trust at all, but rather a *remedy,* which can only have prospective effect from the time a court issues it.

**332**

constructive trust arising at the time of such deposit(s).

 Yet, even if the Defendants can establish that they were fraudulently induced to deposit funds [13], they must also be able to *identify* the funds that are the subject of their constructive trust claim. *See* 76 Am.Jur.2d, *Trusts* § 252 (1975). In the context and parlance of the present litigation, this requirement compels the Defendants to *trace* the Deposited Funds through to the Transfer.[14] *Id.* This is a difficult burden because, as noted and found *supra*, the Deposited Funds were commingled by the Debtor in a unitary bank account (hereafter, the "Commingled Account"), together with, *inter alia*, (i) funds of other "depositors", (ii) income derived from investments, and (iii) the general revenue of the legal practice of the Debtor. Further, the Commingled Account was actively utilized by the Debtor for the payment of its obligations. Although the law indulges certain presumptions and fictions which aid constructive trust claimants in tracing funds into and through a commingled account, *see id.* at §§ 266–268, the Defendants have failed at a basic level to present facts from which this Court could trace the funds they deposited. Thus the constructive trust claim must fail for lack of proof.

## C. Statutory Defenses.

The Defendants argue, alternatively, that even if the Transfer is deemed avoidable preferences under Section 547(b), it nonetheless constitutes an "ordinary course" transfer, and thus qualifies for an exception to a bankruptcy trustee's avoiding powers under the terms of Section 547(c)(2). That statutory defense provides in pertinent part as follows:

> (c) The trustee may not avoid under this section a transfer—
>
> \* \* \* \* \* \*
>
> (2) to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms . . . .

11 U.S.C. § 547(c) (1995).

 A defendant in a preference action bears the burden of proving his entitlement to a Section 547(c) defense. 11 U.S.C. § 547(g) (1995). In the instant case the Defendants have failed to meet that burden.

Courts routinely reject the "ordinary course" defense in the context of a Ponzi scheme, *e.g., Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, (9th Cir.1988), at least as to preference recipients who are investors or depositors in the Ponzi scheme. *E.g., Sender v. Heggland Family Trust (In re Hedged–Invs. Assocs., Inc.)*, 48 F.3d 470, 474–76

---

**13.** The Defendants have introduced no evidence of the Debtor's fraudulent intent as of the time of solicitation of any specific deposit.

**14.** Despite the fact that the Defendants are using the constructive trust claim as a "shield" rather than a "sword", *see Daly v. Deptula, supra,* at 275–76, tracing is a required element of their defense. This is because the implication of a *constructive* trust—

as opposed to the recognition of an *express* trust—is a remedial action in contravention of the intentions of the parties, *i.e.* the proposed constructive trustee never intended to hold the subject funds in trust. Thus, his subsequent payment of funds to the alleged constructive trust beneficiary cannot be construed as the trustee's identification of those funds as trust assets.

(10th Cir.1995). The fundamental analysis of these courts was that a transfer by a Ponzi scheme debtor to a depositor or investor is not in the ordinary course of the business of the debtor, and/or does not follow ordinary business terms, since no lawful entity *ordinarily* pays fraudulently-obtained revenue to early investors. This Court concurs generally with that reasoning.[15]

■ In the instant case the Court finds that although there is insufficient evidence in the record to establish that the Debtor was engaged in a Ponzi scheme throughout the *entire* period of the Defendants' depository relationship with the Debtor, sufficient evidence has been adduced for the Court to find that a Ponzi or Ponzi-like scheme was in operation at the time of the Transfer. Hence the Transfer was made neither "in the ordinary course of business or financial affairs of the debtor" nor "according to ordinary business terms", as required by Section 547(c)(2)(B) and (C). Accordingly, the shelter of Section 547(c)(2) is unavailable to the Defendants.

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Plaintiff against the Defendant Josephine Simeone. This Memorandum of Decision shall constitute the Court's findings of fact and conclusions of law for the purposes of Fed. R. Bank. P. 7052.

## JUDGMENT

This adversary proceeding having been submitted to the Court after trial; and the Court having this day issued its *Memorandum of Decision on Complaint to Avoid Preferential Transfer,* in accordance with which it is hereby

**ORDERED** that a monetary judgment of $5,000.00 shall enter in favor of the Plaintiff against the Defendant Josephine Simeone; and

**IT IS FURTHER ORDERED** that judgment shall enter in favor of the Defendant Francis Simeone.

---

15. Such analysis has even greater force in the instance of a law firm, such as the Debtor here, which does not traditionally or legitimately engage in the provision of investment or banking services.