**In re David A. VIRDEN, Debtor.**

**No. 01–19004–CJK.**

United States Bankruptcy Court, D. Massachusetts.

June 20, 2002.

William Harris, Esq., Beverly, MA, for Debtor.

Carl D'Angio, Esq., Waltham, MA, for Guy Rufo.

Doreen Solomon, Chapter 13 Trustee.

## MEMORANDUM OF DECISION ON MOTION FOR RELIEF FROM STAY OR, IN THE ALTERNATIVE, TO DISMISS THE CASE WITH PREJUDICE AND DETERMINE THE DEBT NONDISCHARGEABLE

CAROL J. KENNER, Bankruptcy Judge.

The basis for this motion is highly unusual: the Chapter 13 Debtor, who was the former employer of the movant, Guy Rufo, withheld more than $16,000 from Mr. Rufo's wages. In blatant disregard of a Probate Court order, the Debtor, on 188 occasions, failed to remit almost all of those funds to the Department of Revenue.

The Movant seeks relief on alternate grounds. First, seeking relief from the automatic stay, the Movant argues that his debt is for child support, and his efforts to collect are not stayed by operation of 11 U.S.C. § 362.[1] Second, the Movant seeks a declaration that his debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4), (5), or (7), objects to the Debtor's proposed Chapter 13 plan on the basis that he is the only creditor, and asks for dismissal of the Debtor's bankruptcy case with prejudice. The Debtor filed a timely opposition and the Court conducted a hearing, taking the matter under advisement.

### Background and Facts

The Debtor, David Virden, filed this Chapter 13 bankruptcy case on November 29, 2001. His Schedules disclose that the Debtor owns no real property, indeed no property of any kind beyond the small amounts of personal property that he exempts pursuant to 11 U.S.C. § 522(d). The Debtor lists only two creditors, both holding unsecured nonpriority claims: $340 owed to B & C Realty, and $54,039.64 owed to the present Movant, Guy Rufo, representing a judgment of $25,000 plus attorneys fees of $29,039.64. On Schedule I, the Debtor describes himself as a construction manager earning $7,132.67 per month, also lists his spouse, a high school teacher, earning $3,982.51, and lists his eighteen-year-old daughter as his only dependent. The combined monthly income after taxes is $7,724.90. Schedule J reports combined monthly expenses of $7,444.00. Selected monthly expenses included in this total are listed as: mortgage or rent $747, food $830, child's college expenses $2,000, "attached itemized expenses" (actually not attached, nor itemized) $653. The Debtor discloses excess monthly income of $280.90, and proposes to pay $245 per month into his Chapter 13 plan. On the Statement of Financial Affairs the Debtor discloses his income from employment for the last three years as $65,000, $68,000 and $60,000. He also asserts business income of $4,000 per annum, that he labels "management fee for 250 Beacham Street Limited Partnership". The Debtor lists an ownership stake in this limited partnership on Schedule B, valued at $5,000 and claimed as fully exempt, and also states that he is the general partner of this business. Elsewhere in the Statement of Financial Affairs, the Debtor says that he holds or controls a commercial warehouse valued at $2.5million on behalf of 250 Beacham Street Limited Partnership. The Debtor's Chapter 13 Plan proposes payments of $245 for 36 months, the minimum permissible period under 11 U.S.C. § 1325. Thus, plan payments will total $8,819.97. The Court observes that the Debtor has designated the entire amount of his own attorney's fee for this case, $2,500, to be paid through the Plan, thus diluting the amount available for his creditors. The upshot is that unsecured creditors, in other words Mr. Rufo, will receive only 10 cents on the dollar.

The Debtor's filing of this Chapter 13 bankruptcy case on November 29, 2001, was precipitated by a state court judgment entered against him in favor of Mr. Rufo. The circumstances giving rise to that judgment are most pertinent to this dispute and are eloquently described by Probate & Family Court Judge McGovern in the decision she issued on June 12, 2001. The precis that follows is condensed from Judge McGovern's decision.

Guy Rufo is a divorced father of three children. Pursuant to a divorce judgment

---

1. Strictly speaking, the Movant should be seeking a declaration that the automatic stay does not apply, rather than relief from stay.

issued in 1992, Rufo was ordered to pay child support to his ex-wife, and the payments were to be collected by means of an income assignment to the Massachusetts Department of Revenue. In other words, Rufo's employer was to withhold the child support payments from Rufo's wages, and remit that sum to the MDOR. At all times relevant to this dispute, the Debtor was President, Treasurer, Clerk and Director of Rufo's employers, AA Environmental Cleaning Services Inc., and Canon Contracting Inc. In 1997, the MDOR filed a complaint for civil and criminal contempt against Rufo for non-payment of child support, and a complaint for civil contempt against the Debtor, AA Environmental, and Canon Contracting.[2] The state court allowed Rufo to maintain a cross-claim against the Debtor and his employers, and the trial was held on April 9, 2001, before Judge McGovern. Her findings of fact and conclusions of law are summarized below.

Beginning in July 1992 and continuing to January 1997, the Debtor as Rufo's employer deducted approximately $70 per week from Rufo's wages in accordance with the divorce judgment and income assignment.[3] Rufo first became aware that his child support obligation was in arrears in 1993 when his income tax refund was intercepted by the MDOR and IRS. Between 1993 and 2000, over $10,000 of Rufo's federal and state income tax refunds and other property were seized or intercepted by the MDOR in satisfaction of

accrued child support arrears. This arrearage was entirely the result of the Debtor David Virden's failure to comply with the income assignment order. Rufo testified, apparently very credibly, that when confronted the Debtor assured him that he would remedy the situation. However, the Debtor never did so. The Debtor was unable to explain to the State Court where Rufo's withheld wages ended up, or why he failed to comply with the income assignment order. The Court found the Debtor's wilful failure—or utter refusal—to properly forward Rufo's child support for roughly five years, egregious. Judge McGovern found that on one hundred and eighty-eight (188) occasions from July 1992 to January 1997, the Debtor disobeyed the clear and unequivocal order of the Probate Court and the income assignment. In total during this period, the Debtor was responsible for withholding $16,450 from Rufo's wages, but forwarding only $3,272.50 to the MDOR.[4]

As a direct result of the Debtor's malfeasance, Rufo was classified as a "deadbeat dad" and suffered many negative consequences: his income tax refunds and a bank account containing some $1,300 were seized by the MDOR or IRS; beginning in 1996, Rufo was denied a renewal of his driving license and was unable to drive for several years; he was unable to obtain credit cards and was denied loans; he was denied employment after background checks revealed his child support arrearage. Furthermore, in order to sort out

---

2. The MDOR subsequently sought to dismiss the complaint against Rufo stating that it could not show that Rufo had disobeyed the probate court divorce judgment. The state court denied the MDOR's request noting that Rufo was entitled to more than mere dismissal of the charges against him. He was entitled to a finding that he was, in fact, not guilty of civil contempt against the probate court.

3. From 1992 to sometime in 1994, Rufo worked for Canon Contracting. He then switched to the Debtor's other business, AA Environmental, and worked there until January 1997.

4. In May 1997, the Debtor entered into a settlement with the MDOR whereby he would pay $16,537.50 in satisfaction of the child support arrearage that was owed.

the procedural and administrative morass that his life had become, Rufo was obliged to hire an attorney and incur considerable legal fees.

Judge McGovern also found the manner in which the Debtor had structured and managed his business endeavors and real estate holdings to be "deceptive and misleading". She found that the Debtor had "manipulated his personal property, real property, earnings, accountings, and investments so as to insulate himself from the contempt judgment liability, and so as to create the appearance of an inability to comply with the contempt judgment". Further, Judge McGovern says:

> "The evidence produced at trial indicates at first blush that it might be difficult for Virden to comply with the Judgment of Contempt. The Court finds, however, that Virden has the ability to do so and is more than capable of complying with the Judgment of Contempt.
>
> ...In light of the creative manner by which Virden has structure(d) his finances and assets, Virden should have no difficulty in finding a creative way to comply with the Court's Judgment." [5]

*Procedural History, Findings of Fact, and Conclusions of Law on Defendant/Plaintiff-in Cross–Claim's Complaint of Contempt*, at 10.

---

**5.** Judge McGovern observed that the bulk of the Debtor's payments to the MDOR pursuant to the settlement was made with checks drawn on the Debtor's wife's bank account.

**6.** Judge McGovern noted that a strict application of the statute would result in statutory penalties totaling $94,000 (being $500 for each of the 188 occasions that the Debtor failed to remit the child support). However, the Judge reasoned that imposing such a penalty would be as unconscionable as the Debtor's habitual violation of the court's income

Judge McGovern went on to find the Debtor's "nefarious conduct" wholly responsible for Rufo's attorney's fees in the amount of $29,039.64. Furthermore, the Judge found the Debtor liable for statutory penalties pursuant to M.G.L. c. 199A, § 12(f) in the amount of $25,000.[6]

Following the entry of Judge McGovern's decision, the Debtor made no attempts to pay Rufo's claim but instead filed this Chapter 13 bankruptcy case in an effort to see the debt discharged.

### Discussion

▮ The movant first argues that his debt is one for child support and as such the automatic stay does not apply by operation of 11 U.S.C. § 362(b)(2)(B) [7]. This argument must fail. It is well settled that the scope of the reference to alimony, maintenance or support contained in Section 362(b)(2)(B) is consistent with that contained in Section 523(a)(5). That is to say, the term "support" is restricted to amounts payable by the debtor *to a spouse, former spouse, or child of the debtor* in connection with a separation agreement, divorce decree or other order of a court of record. That is not the nature of the debt here, and consequently, the movant's claim is not excepted from the application of Section 362(a). Neither can the debt owed to Mr. Rufo be nondischargeable pursuant to 11 U.S.C. § 523(a)(5) for the same reason. Alternatively, Mr. Rufo seeks a declaration that his claim is non-

assignment order. The reduced amount of $25,000 was held to be "more than fair and reasonable in light of Virden's deplorable behavior". *Id.* at 11.

**7.** Section 362(b) states that the filing of a bankruptcy petition does not operate as a stay of:

> (B) ...the collection of alimony, maintenance, or support from property that is not property of the estate.

11 U.S.C. § 362(b)(2)(B).

dischargeable pursuant to 11 U.S.C. § 523(a)(4), or (7). The Court need not decide whether or not Mr. Rufo's claim falls within the scope of these two subsections since neither category of debt is nondischargeable in a case under Chapter 13 of the Bankruptcy Code.

■ Finally, the movant objects to the Debtor's Chapter 13 plan on the grounds that he is the only creditor and asks that the case be dismissed.[8] Clearly, Mr. Rufo feels that the Debtor filed this bankruptcy case with the sole objective of avoiding payment of his judgment. This objection, focusing on the single creditor nature of the case, necessarily raises the issue of the Debtor's good faith in filing his Chapter 13 petition and plan.

■ The Bankruptcy Code itself does not define the term "good faith", and the search for its meaning has given rise to substantial litigation, often in the same setting as here: the use of Chapter 13's "superdischarge" to discharge a debt that would be nondischargeable under Chapter 7.[9] There are two instances in a Chapter 13 case when good faith becomes an issue. First, Section 1307(c) of the Code provides that the court may dismiss a case or convert it for cause, and numerous courts have held that filing a Chapter 13 petition in bad faith is cause for conversion or dismissal. *E.g., In re Mattson*, 241 B.R. 629, 635 (Bankr.D.Minn.1999). Second, in order to be confirmed, a Chapter 13 plan must be proposed in good faith. 11 U.S.C. § 1325(a)(3). The same standard for finding good, or bad, faith may properly be used in both instances, the only distinction being who bears the burden of proof. *Id.* Under Section 1307(c), the objecting creditor bears the burden of proof, while under Section 1325(a)(3), it is the debtor. *Id.* And when the debtor seeks the Chapter 13 superdischarge to discharge debt that would remain undischarged in a Chapter 7, that burden is especially heavy. *E.g. In re Leavitt*, 209 B.R. 935, 940 (9th Cir. BAP 1997); *In re Haskell*, 252 B.R. 236, 242 (Bankr.M.D.Fla.2000).

Courts differ in their approach to a determination of the debtor's good faith, but the majority favor a totality of the circumstances analysis. Early versions of this analysis included a laundry list of nonexclusive factors encompassing the debtor's ability to pay, whether the plan proposed a fair treatment of creditors, and the debtor's integrity in the bankruptcy process. *United States v. Estus (In re Estus)*, 695 F.2d 311 (8th Cir.1982).[10] Fol-

---

8. In fact, Rufo also objects that he holds a nondischargeable claim, but as already discussed, he does not.

9. Chapter 13 offers a broader discharge to debtors than does Chapter 7, and most of the debts classified as nondischargeable in Chapter 7 pursuant to 11 U.S.C. § 523(a), are discharged pursuant to 11 U.S.C. § 1328(a). Section 1328(a) reads, in pertinent part:

> . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
> (1) provided for under section 1322(b)(5) of this title;

(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title; or
(3) for restitution, for a criminal fine, included in a sentence on the debtor's conviction of a crime. .

11 U.S.C. § 1328(a).

10. The full list of factors in *Estus* is: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the

lowing the Code's amendment in 1984, many of the economic factors included in the analysis were subsumed into the new requirements for confirmation of a Chapter 13 plan. Thereafter, courts' focus narrowed to the following lines of inquiry: (1) the debtor's accuracy in stating his debts and expenses; (2) the debtor's honesty in the bankruptcy process, including whether he has attempted to mislead the court and whether he has made any misrepresentations; (3) whether the Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether the debt would be dischargeable in a Chapter 7; and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief. *E.g. Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987) (noting that the totality of the circumstances test created in *Estus* was alive and well, albeit changed, after the 1984 Code amendments, and must still be applied on a case-by-case basis). This approach to a good faith determination continues to be employed by numerous courts in the majority of circuits. *E.g. In re Young*, 237 B.R. 791, 798 (10th Cir. BAP 1999) (good faith analysis is made on a case by case basis and should take a "totality of the circumstances" approach); *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996); *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1348–49 & n. 4 (8th Cir.1990) (en banc) (confirming continued viability and general purpose of the totality of the circumstances analysis).

In this circuit, the Bankruptcy Appellate Panel has articulated a purportedly simpler approach in *In re Keach*, 243 B.R.

851, 856 (1st Cir. BAP 2000). In *Keach*, the debtors originally filed under Chapter 7 and tried to have a nondischargeable fraud claim classified as a dischargeable contract claim. When they were unsuccessful, they attempted to convert to Chapter 13 but their cumulative debt was too high. After obtaining a Chapter 7 discharge but before their case was closed, the debtors filed again under Chapter 13 seeking the superdischarge, and offering a small dividend to unsecured creditors. The Bankruptcy Court found that the debtors had filed their petition and plan in bad faith, but the Bankruptcy Appellate Panel reversed. In so doing, it counseled against the totality of the circumstances approach favored by most courts, and against grounding a bad faith determination on the debtor's pre-petition conduct. The BAP held that a number of specific acts by the debtors were not by themselves indicative of bad faith: namely, to file a Chapter 13 petition during the pendency of a Chapter 7 case; to offer only a small dividend to general unsecured creditors; and to use the Chapter 13 superdischarge to attempt to discharge a debt that would be nondischargeable in Chapter 7. *Keach* at 870. There are a multitude of other courts that disagree on this last point. *In re Young*, 237 B.R. at 799 (fact that debt would have been dischargeable in Chapter 7 is not per se bad faith unless combined with other factors); *In re Leavitt*, 209 B.R. at 940; *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992); *In re LeMaire*, 898 F.2d at 1349; *In re Haskell*, 252 B.R. at 243–44; *In re Brugger*, 254 B.R. 321, 325–26 (Bankr.M.D.Pa.2000); *In re Peter-*

extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in a Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the

frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee. *Estus,* 695 F.2d at 317.

*sen,* 228 B.R. 19, 26 (Bankr.S.D.Fla.1998) (Chapter 13 plan serving no purpose other than the discharge of an otherwise nondischargeable debt by debtor not in need of Chapter 13 relief should be denied for lack of good faith). *Keach* advocated an examination of only the circumstances relevant to the debtor's proposed plan and post-filing conduct in determining whether the debtor has exhibited good faith. *Keach* at 870. In plain terms, the Bankruptcy Appellate Panel saw good faith as simple honesty of purpose: "Congress presumably used the phrase 'good faith' in its ordinary sense ... (imposing) a standard of simple honesty." *Id.* at 856.

Conversely, *Keach* specifically does *not* stand for the proposition that the circumstances surrounding a debtor's Chapter 13 filing must be irrelevant to a good faith determination:

"We do not hold today that an examination of the surrounding circumstances is inappropriate in determining whether a debtor has met the good faith requirement ... Even the simplistic word 'honesty' can be elastic in its perception and application, subsuming as it does the elusive element of 'intent' which can be judged only by examining surrounding circumstances ... "

*Keach* at 871.[11]

 I agree with the *Keach* court that intent, or motive, is a relevant factor to be examined, as do many other courts.

*Keach* at 871; *e.g. In re Lilley,* 91 F.3d at 496; *In re McNichols,* 249 B.R. 160, 181 (Bankr.N.D.Ill.2000). And, while I agree with *Keach* that the *precise* nature of the debtor's pre-petition conduct giving rise to a specific debt should not be determinative of good faith, I also believe that pre-petition events do have a bearing on the debtor's motivation and sincerity in filing for bankruptcy relief. Although a debtor's pre-petition conduct *alone* should not be enough to demonstrate bad faith, coupled with other circumstances, it may well tip the balance. Both the *Keach* and the totality of the circumstances approach agree that no single factor pre- or post-petition, may by itself demonstrate bad faith, but that several factors, perhaps not all carrying the same weight, may add up to bad faith. So, the Court cannot determine whether a debtor has filed his Chapter 13 petition and plan with simple honesty of purpose without engaging in some form of multi-faceted analysis in which pre-petition conduct is one of many relevant factors. The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability. Is the debtor motivated by a desire not to pay creditors rather than inability to pay? *E.g. Mattson* at 637; *Gier v. Farmers State Bank (In re Gier),* 986 F.2d 1326, 1330 (10th Cir.1993). The answer to that question lies in the surrounding pre- and post-petition events.[12]

---

**11.** *Keach* is therefore somewhat self-contradictory. On the one hand, apparently eschewing the totality of the circumstances approach, *Keach* urges a simpler test focusing only on the debtor's simple honesty of purpose. But on the other hand, the decision explicitly recognizes that intent is an element of honesty, and further, that intent must be gauged from the surrounding circumstances. Perhaps the difference in approach comes down to the *Keach* court's belief that other courts have placed too much emphasis on the debtor's pre-petition conduct.

**12.** Tangentially, the Court notes that although the BAP decision may be persuasive authority, it is not binding precedent on this Court. This important aspect of federal jurisdiction has not yet been addressed by either the United States Supreme Court nor any Circuit Court of Appeals, but the topic is thoroughly researched and discussed in *In re Carrozzella & Richardson,* 255 B.R. 267 (Bankr.D.Conn.

Beyond this, *Keach's* application to this case is further limited by distinguishable facts. The debtors in *Keach* were burdened by numerous debts when they filed their Chapter 7 case. Here, the Debtor is burdened by nothing other than Mr. Rufo's judgment, and as Judge McGovern observed, the degree to which the Debtor is truly burdened by this debt is doubtful. At the time of the *Keach* debtors' Chapter 13 filing and even after their Chapter 7 discharge, there remained significant priority tax debt ($35,759), together with the problematic fraud claim (originally $106,000 but later $180,000 with interest), and some smaller unsecured claims ($8,813). In stark contrast, in this case the Debtor has only one debt—Rufo's judgment of $54,039.64.[13] This is a two party dispute and it is clear that the Debtor's sole motivation in filing this Chapter 13 case was to avoid payment of this singular debt. Other courts have rightly found such a motivation adequate grounds for dismissal. *E.g. In re Mattson*, 241 B.R. at 634 (dismissing the case with prejudice, the court found that there was only one creditor of any substance, that the debtors had done everything in their power to stall and avoid payment of this debt pre-petition, and that the Chapter 13 case was filed solely to avoid payment of this debt); *In re Tornheim*, 239 B.R. 677, 688–87 (E.D.N.Y.1999); *In re Ramji*, 166 B.R. 288, 290 (Bankr.S.D.Texas 1993) (the court dismissed the case on a finding of bad faith

when the debtor admitted filing his petition solely to avoid payment to a single creditor). Here, relying on the factual findings of Judge McGovern in the Probate Court, there is no indication that the Debtor was, or is, in financial distress. On the contrary, after a trial, Judge McGovern specifically found that the opposite was true—the Debtor was perfectly well able to satisfy Mr. Rufo's judgment notwithstanding the artificial "first blush" appearance of the Debtor's financial position. Judge McGovern pointedly referred to the Debtor's manipulated and misleading business arrangements and real estate holdings. The Debtor's bankruptcy schedules are illuminating in their opacity: little is offered about the Debtor's business partnership arrangements, and the validity of the listed expenses is not adequately explained. All this is consistent with the view expressed by Judge McGovern. In summary, the Debtor has not met his burden in demonstrating that his Chapter 13 petition or his plan were filed in good faith.

I conclude that the Debtor's filing was motivated by a desire to avoid payment to Mr. Rufo, rather than by any inability to meet his liabilities, such as they are. This, harnessed with the findings of Judge McGovern as to the Debtor's deceptive financial arrangements, leads to the inescapable conclusion that the Debtor is not making an honest effort to repay his debt to the best of his ability, and this constitutes bad

---

2000). To begin, the *Carrozzella* court examines the *stare decisis* effect of district court decisions, reasoning that if the decision of one district court judge is not binding on another, even within the same district, then a judge of the bankruptcy court, being a unit of the district court, is similarly not bound. Continuing logically, and recognizing that the BAP is "composed of Article I judges whose license depends upon ... the imprimatur of the Article III judges of the district court ...", the *Carrozzella* court deduces that BAP

decisions can carry no more precedential weight than those of a district court. Concluding, the court says: "Simply put, if Congress had intended the decisions of an Article I court to have the same binding precedential effect as decisions of a circuit court of appeals, it needed to say so in unequivocal language. It did not..." 255 B.R. at 272–73.

**13.** The other listed debt of $340 is a mere token.

faith sufficient to dismiss the case. A separate order will enter.

***ORDER ON MOTION FOR RELIEF FROM STAY OR, IN THE ALTERNATIVE, TO DISMISS THE CASE WITH PREJUDICE AND DETERMINE THE DEBT NONDISCHARGEABLE***

For the reasons stated in the memorandum of decision issued today, the Motion to Dismiss is allowed, and the case is hereby dismissed.

The request for a determination that the debt owed to the movant, Guy Rufo, is nondischargeable is denied. The motion for relief from the automatic stay is moot.