**In re Jill A FLEURY, Debtor.**

No. 02–15033–WCH.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

June 6, 2003.

2

William G. Billingham, Marshfield, MA, for debtor.

Mary Jeanne Stone, Fall River, MA, for creditor.

### MEMORANDUM OF DECISION ON THE ORDER TO SHOW CAUSE

WILLIAM C. HILLMAN, Bankruptcy Judge.

## I. Introduction

I took this matter under advisement after I held a hearing on March 27, 2003 on my Order to Show Cause why I should not dismiss the petition of Jill A. Fleury (the "Debtor") for lack of good faith in filing. After considering the arguments of all parties and the numerous affidavits which the Debtor submitted, I conclude that the Debtor failed to show cause. For the reasons explained below, I will enter an order dismissing the Debtor's case and prohibiting the Debtor from refiling for 360 days.

## II. Facts

I base my findings on the undisputed facts on the Complaint to Determine Non–Dischargeability of Debt (the "Complaint")[1] which Scott A. Carmichael (the "Creditor") filed; the Debtor's Answer to the Complaint; the Motion For Relief From Automatic Stay By Scott A. Carmichael (the "Motion for Relief"); the Debtor's Answer to the Motion for Relief; the January 9, 2003 hearing on the Motion for Relief; the March 27, 2003 hearing on the Order to Show Cause; and the affidavits which the Debtor submitted.

The Commonwealth of Massachusetts Probate and Family Court, Bristol Divi-

sion (the "Probate Court") entered a Divorce Decree terminating the marriage between the Debtor and the Creditor on May 29, 1995. The Divorce Decree incorporated the marital separation agreement which provided that the Creditor receive a one third interest in any judgment or settlement received by the Debtor from her a Massachusetts Commission Against Discrimination ("MCAD") case. At the time of the Divorce Decree, the MCAD case had not been resolved.

The Debtor filed a petition for Chapter 13 bankruptcy on January 11, 1999 ("Petition I"). In Schedule B, the Debtor listed the MCAD case under the category of "other contingent and unliquidated claims of every nature," valued the judgment of the MCAD case at $143,000.00 and explained that the judgment was "less 35% contingency fee owed to attorney, costs due to attorney and one third of award for emotional distress and back pay owed to [Creditor] pursuant to divorce."[2] The Debtor scheduled one unsecured priority debt, $2,352.99 to the Internal Revenue Service. The Debtor listed two unsecured debts on Schedule F: a student loan of $17,000 and $10,000 on a promissory note to the Creditor. The Debtor did not list the Creditor as a creditor on the judgment of the MCAD case. The Debtor listed two secured loans on her residence totaling $124,189.29 and valued the home at $200,000.00. Additionally, the Debtor listed a $3,550.00 secured car loan. On September 1, 2001, the Debtor paid off the Chapter 13 plan that provided a one hundred percent dividend to the creditors with

---

1. The Complaint arises from an adversary proceeding the Creditor instituted against the Debtor. The Complaint incorporates the Bristol County, Massachusetts Probate and Family Court's "Findings of Fact and Rationale" (the "Findings") as to the Debtor's complaint for modification of alimony. I take judicial notice of the findings pursuant to

F.R.E. 201. State court findings are among the kind of facts of which I can take judicial notice. F.R.E. 201(b).

2. At the time of the filing of Petition I, a ruling in favor of the Debtor in the MCAD case was under appeal.

a lump sum payment. The Order Confirming the Chapter 13 Plan stated that all property of the estate "shall remain property of the estate during the term of the plan and shall vest in the debtor only upon discharge." The Debtor received her discharge on March 15, 2001.

In February 2001, the Debtor was awarded $390,000.00 from the MCAD case (the "Judgment"). After paying costs and attorney fees, the Debtor received $244,000.00 of the Judgment. The Debtor failed to alert the Court of her receipt of the Judgment, but states that the Chapter 13 trustee was aware of the final award.

The Debtor's entered into numerous additional financial transactions from February, 2001 until she filed a second bankruptcy petition. During that period, the Debtor loaned $30,000.00 to her law partner for real property but did not receive a promissory note or enter into a written agreement for repayment. The Debtor states that she has received an automobile from her law partner as repayment on the loan. The Debtor gave $200,000.00 to her sister and her sister then transferred the money to her father. The Debtor's father placed $100,000.00 into five separate education accounts for the Debtor's five children. The father then conveyed the remaining funds back to the Debtor. The Debtor also spent $14,000.00 on a trip to Hawaii. The Debtor gave without consideration $58,500.00 to her husband. On March 4, 2002, the Debtor had $79,217.81 in a bank account in her name. In addition, the Debtor refinanced her residence and increased her line of credit.

On June 13, 2002, after a trial on a complaint by the Debtor for modification of the Divorce Decree seeking increased child support, the Probate Court issued Findings of Fact and Rationale (the "Findings").[3] *Fluery v. Carmichael*, Massachusetts Probate and Family Court, Case No. 94 D 1996 DVI (1997). The Probate Court, in holding that the Creditor should increase his child support payments, found that "the real motivation for filing [Petition I] for debtor relief was then, and currently is, an attempt to beat [the Creditor's] claim for a share of the MCAD claim." *Id.* At the same time, the Probate Court held over a complaint for contempt that the Creditor filed for a future hearing. The Debtor has appealed the Findings of the Probate Court and a ruling on the appeal has not issued.

On July 12, 2002, a month after the Probate Court decision, the Debtor filed a second Chapter 13 ("Petition II"). The Debtor again listed two secured loans on her residence, but no secured loans on automobiles.[4] The secured loans in the Schedule D of Petition II totaled $231,605.48. The Debtor valued the home at $325,000.00. The Debtor listed no priority unsecured creditors and three unsecured creditors. The unsecured claims were: $17,417.97 on student loans; $1,373.00 on a credit card; and an unknown amount to the Creditor relating to the Judgment. The Debtor stated in Schedule F that the claim to the Creditor is disputed and alleged that the Creditor's debt was discharged in the previous bankruptcy and subject to setoff. The Debtor filed her Chapter 13 plan on July 29, 2002 and did not make any provision for payment of the Creditor's claim on the Judgment. I confirmed the Debtor's plan on October 15, 2002. The Creditor did not object to the confirmation of the plan. On

---

3. The Debtor had filed the complaint for the modification of the Divorce Decree on November 21, 1997 in the Probate Court.

4. The Debtor lists an equitable interest but not a legal interest on the automobile of her law partner on Schedule B of Petition II.

October 17, 2002, the Creditor filed a proof of claim for $156,000.00 from the Divorce Decree as an unsecured, priority claim.

On October 17, 2002, the Creditor filed the Motion for Relief in order to pursue a state court action to recover the money from the Judgment that the Creditor believed was owed to him. On the same day, the Creditor filed an adversary proceeding on the non-dischargeability of his debt. On November 27, 2002, the Debtor filed a response and opposition to the Creditor's motion for relief and she filed an objection to the Creditor's proof of claim. I held a hearing on the Motion for Relief and the Creditor's proof of claim on January 9, 2003 and took these matters under advisement. After reviewing the Debtor's schedules and her actions surrounding the case, I issued an Order to Show Cause (the "Order") as to why I should not dismiss the Debtor's case for lack of good faith in filing. I held a hearing on the Order on March 27, 2003. At the hearing, I took the issue of the dismissal of the Debtor's case under advisement.

## III. Analysis

### A. Lack of Good Faith in Filing

 The Bankruptcy Code provides that "on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert... or may dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause..." 11 U.S.C. § 1307(c). Although the statute does not specifically allow a court to dismiss a case on its own motion, courts now recognize that a court's *sua sponte* dismissal is permitted through the 1986 amendments of 11 U.S.C. § 105.[5] *In re Hammers*, 988 F.2d 32, 34–35 (5th Cir. 1993); *In re Kazis*, 256 B.R. 242, 244 (Bankr.D.Mass.2000); *In re Tobias*, 200 B.R. 412, 415 (Bankr.M.D.Fla.1996). For Chapter 13 cases, 11 U.S.C. § 1307(c) specifically enumerates ten circumstances in which a court may convert or dismiss a case. While not specifically enumerated as cause, it is well established that lack of good faith (or bad faith) is cause for dismissal or conversion of a Chapter 13 case under 11 U.S.C. § 1307(c). *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222–23 (9th Cir.1999); *In re Cabral*, 285 B.R. 563, 573 (1st Cir. BAP 2002); *see also Ho v. Dowell (In re Ho)*, 274 B.R. 867, 870–71 (9th Cir. BAP 2002).

 The Debtor must file both her Chapter 13 petition and Chapter 13 plan in good faith. *See In re Love*, 957 F.2d 1350, 1354–55 (7th Cir.1992). The term "good faith" is not defined, and, therefore, the good faith inquiry is a "fact intensive determination better left to the discretion of the bankruptcy court." *Love*, 957 F.2d at 1355. Bankruptcy courts generally apply a totality of the circumstances test to determine whether a debtor lacked good faith when filing a Chapter 13 petition for purposes of § 1307(c). *See e.g. In re Young*, 237 B.R. 791, 798 (10th Cir. BAP 1999) (good faith analysis is made on a case by case basis and should take a "totality of the circumstances" approach); *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996); *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1348–49 (8th Cir.1990) (en banc) (confirming continued viability and general

5. Section 105(a) states that:
The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. 11 U.S.C. § 105(a)

purpose of the totality of the circumstances analysis).

■ The United States Bankruptcy Appellate Panel of the First Circuit originally did not adopt a totality of the circumstances approach to determine lack of good faith but instead advocated an examination of only the circumstances relevant to the debtor's proposed plan and post-filing conduct. *See In re Keach*, 243 B.R. 851, 856 (1st Cir. BAP 2000). The Panel in *Keach* proposed a "standard of simple honesty." *Id.* Both Judge Kenner and Judge Rosenthal, however, expanded *Keach's* examination of the debtor's lack of good faith to include both pre-petition and post-petition conduct of the Debtor. *In re Scotten*, 281 B.R. 147, 149 (Bankr.D.Mass.2002); *In re Virden*, 279 B.R. 401, 407 (Bankr.D.Mass. 2002). Judge Kenner explained that the bottom line in determining good faith in a debtor's filing is "whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." *In re Virden*, 279 B.R. at 407. The Panel then impliedly adopted the totality of the circumstances test to determine lack of good faith by affirming a bankruptcy court's decision based on the totality of circumstances test. *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 573–74 (1st Cir. BAP 2002). I find that it is appropriate to examine the Debtor's pre-petition and post-petition conduct and that the totality of circumstances test is now the appropriate test to determine a debtor's lack of good faith, or bad faith, in this Circuit.

■ In determining a debtor's lack of good faith in filing a Chapter 13 petition under the totality of circumstances test, bankruptcy courts consider: (1) whether a debtor misrepresented facts in her petition, unfairly manipulated the Bankruptcy Code, or otherwise filed a Chapter 13 petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994); *In re Cabral*, 285 B.R. at 573; *In re Ho*, 274 B.R. at 871. A finding that the debtor lacked good faith does not require fraudulent intent by the debtor. *Id.* Malfeasance, ill will towards the creditors, malice or actual fraud is not required to find a debtor lacked good faith. *Id.*

■ Turning to this case and the first factor of misrepresented facts and manipulation of the Bankruptcy Code, the Debtor dissipated over $350,000.00 over the year and a half between her two bankruptcy filings. The Debtor received $244,000.00 from the Judgment and $107,416.19 after refinancing her home between Petition I and Petition II. The Debtor in her affidavit submitted at the March 27, 2003 hearing attempts to account for these proceeds. Her transfers included $100,000.00 in trusts to her children using her sister and father as conduits, a $58,500.00 gift to her husband less than five months before Petition II, a $30,000 loan without repayment terms to a law partner, a trip to Hawaii, lawyers fees and home improvement costs. Not only do these transfers have the indicia of fraudulent transfers, the Debtor in her affidavit fails to account for $26,308.74 of the assets she received from the Judgment and the refinancing of her residence. The first factor of the totality of circumstances test demonstrates that the Debtor lacked good faith in filing.

I combine my analysis of the second and third factors because they are closely intertwined in this case. The Debtor's history of filings demonstrates that the Debtor only intended to defeat the Probate Court's Divorce Decree. Although Petition II is only the Debtor's second bank-

ruptcy filing, the similarity between the two petitions demonstrate a common intention in both filings. The Debtor is singular in her desire to discharge the Creditor's claim in the Judgment. The paucity of unsecured assets compared to the Debtor's equity underscores the intent of the Debtor. Petition I listed $29,352.99 in unsecured debt and unsecured priority debt which included $10,000.00 on a promissory note to the Creditor, $2,352.99 in tax debt and $17,000.00 in non-dischargeable student loans. The Debtor listed in Petition II $18,790.97 in unsecured debts of which $17,417.97 is non-dischargeable student loans and $1,373 is credit card debt. The dischargeable debt on both Petition I and Petition II is very small and does not demonstrate a need for bankruptcy protection.

In Petition I, the Debtor expressly listed her interest in the Judgment as to not include the Creditor's claim yet listed the Creditor's claim on a promissory note. Conversely, in Petition II, the Debtor lists the Creditor's claim in the Judgment as contested because the claim was discharged in Petition I. The Debtor, a lawyer and a partner in her own firm, based her conclusion that the Creditor's debt was discharged on the representations, from other lawyers, including her law partners. Schedule B in Petition I, however, belies the Debtor's contention that the Creditor's debt was discharged in Petition I. The Debtor cannot make contradictory statements in her filings with the Court. *See Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir.), cert. denied, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993); *see also Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987) (the doctrine of judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already as-

serted in another"). The Creditor's share of the Judgment was expressly not included in the Debtor's bankruptcy estate in Petition I and was not discharged in Petition I. *See* 11 U.S.C. 541(a)(1). The Debtor therefore cannot assert that the Debtor's claim was discharged in Petition II. Petition I and Petition II demonstrate the intent of the Debtor was to utilize the protections of bankruptcy to avoid the Creditor's claim in the Judgment. The Probate Court, after a trial, reached the conclusion that the "real motivation" of Petition I was to defeat the Creditor's claim in the Judgment. Petition II was an attempt to verify that Petition I had defeated the Creditor's claim. Both the second and third factor of the totality of circumstances test show that the Debtor lacked good faith in filing.

As to the egregious behavior factor, the Debtor is not making an honest effort to repay her debts to the best of her abilities but instead is attempting to thwart payment to the Creditor. *See Patriot Cinemas*, 834 F.2d at 212 (one cannot play "fast and loose with the courts"); *In re Virden*, 279 B.R. at 407. In the both Petition I and Petition II, the Debtor indicates no intention to pay the Creditor. The Debtor filed Petition I prior to her receipt of the Judgment or the full extent of the Judgment was known. Petition I excluded the Creditor's claim in the Judgment in the Schedules. The Debtor made no effort to update Petition I when she received the money from the Judgment even though she had not yet received her discharge. Petition II then contests the Creditor's claim in the Judgment and contends it was discharged. The Debtor's clear intention was to use the Bankruptcy system to avoid the Creditor's portion of the Judgment agreed upon in the Divorce Decree. *See In re Leavitt*, 171 F.3d at 1226. The Creditor's claim is the only claim of any

8

substance that the Debtor could have discharged through either Petition I or Petition II. The final factor ·of the totality of circumstances test, likewise, demonstrates that the Debtor lacked good faith in filing.

The Debtor's actions appear purposeful and planned. The Debtor purposefully excluded the Creditor's claim from her Petition I by the wording in Schedule B. The Debtor then received the Judgment and had the ability to pay the Creditor's claim, as well as all creditors' claims. Instead, the Debtor transferred all of the money she received from refinancing her house and from the Judgment to family and friends. The Debtor transferred over $350,000.00 in less than year and a half. By the time of the filing of Petition II, the Debtor had very few assets and little income with which to fund a plan or pay the Creditor's claim in full.

 The filing of bankruptcy solely to thwart a creditor claim rather than making a honest effort to pay debts is bad faith. *See Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326, 1330 (10th Cir. 1993) (debtor motivated by desire not to pay rather than inability to pay); *In re Virden*, 279 B.R. at 410 (dismissal for bad faith when creditor's filing was motivated by a desire to avoid payment to a single creditor rather than by any inability to meet his liabilities); *In re Mattson*, 241 B.R. 629, 634 (Bankr.D.Minn.1999) (dismissing case with prejudice, the court found that there was only one creditor of any substance, that the debtors did everything in their power to stall and avoid payment of the debt pre-petition, and that the Chapter 13 case was filed solely to

avoid payment of this debt); *In re Ramji*, 166 B.R. 288, 290 (Bankr.S.D.Texas 1993) (the court dismissed the case on a finding of bad faith when the Debtor admitted filing the petition solely to avoid payment to a single creditor). Likewise, the filing of bankruptcy for the sole purpose of avoiding payment of a settlement agreement is filing with a lack of good faith. *See In re Griffith*, 203 B.R. 422, 425 (Bankr.N.D.Ohio 1996) (debtor filed case in bad faith solely to avoid effect of divorce court judgment and order to provide ex-spouse with share of marital property); *In re Moog*, 159 B.R. 357, 361 (Bankr.S.D.Fla. 1993) (Chapter 11 filed by debtor to circumvent ex-spouse's efforts to enforce divorce decree was dismissed as bad faith filing); *In re Breon*, 94 B.R. 576, 577 (Bankr.D.Minn.1988) (lack of good faith where debtor's sole purpose was to avoid paying debt to ex-spouse). The totality of the circumstances in the Debtor's filing demonstrate that the Debtor filed for the sole intent of discharging the debt to the Creditor that was awarded in a settlement agreement in state court. The Debtor had the ability to pay her debts, but instead thwarted the Creditor by transferring a great deal of money to family members and friends. I find the Debtor demonstrated a lack of good faith in filing Petition II.

## B. Bar from Refiling for 360 days

 The dismissal of bankruptcy cases with and without prejudice is authorized by 11 U.S.C. § 349(a).[6] In general, a bankruptcy court's dismissal is ordered without prejudice in order to carry out the remedial purpose of the Bankruptcy Code

6. Section 349(a) reads
"Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does

the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." 11 U.S.C. § 349(a).

and to restore property rights, insofar as is practicable, to the same positions as when the case was first filed, but without affecting the disposition of debts. *In re Leavitt*, 171 F.3d at 1223; *In re Tomlin*, 105 F.3d 933, 936–37 (4th Cir.1997); *In re Lawson*, 156 B.R. 43, 45 (9th Cir. BAP 1993). The phrase "[u]nless the court, for cause, orders otherwise" in 11 U.S.C. § 349(a) authorizes a bankruptcy court to dismiss the case with prejudice. *In re Leavitt*, 171 F.3d at 1223; *see also In re Tomlin*, 105 F.3d at 937; *In re Spear*, 203 B.R. 349, 354 (Bankr.D.Mass.1996); *In re Greenberg*, 200 B.R. 763, 768 (Bankr. S.D.N.Y.1996). A dismissal with prejudice bars further bankruptcy proceedings between the parties and is a complete adjudication of the issues. *In re Leavitt*, 171 F.3d at 1223; *Tomlin*, 105 F.3d at 936–37.

 "Cause" for dismissal under 11 U.S.C. § 349 has not been specifically defined by the Bankruptcy Code. *In re Leavitt*, 171 F.3d at 1223. A finding of bad faith based on egregious behavior under 11 U.S.C. § 1307(c) will satisfy "cause" under § 349 and can justify dismissal with prejudice. *Tomlin*, 105 F.3d at 937; *In re Huerta*, 137 B.R. 356, 374 (Bankr.C.D.Cal. 1992). Moreover, dismissal with prejudice bars re-filing for a limited period of time. *In re Spear*, 203 B.R. at 354; *In re Greenberg*, 200 B.R. at 768; *In re Belden*, 144 B.R. 1010, 1022 (Bankr.D.Minn.1992); *In re Dilley*, 125 B.R. 189, 197 (Bankr. N.D.Ohio 1991).[7]

The extent and egregiousness of the Debtor's actions found in the foregoing analysis of totality of the circumstances for 11 U.S.C. § 1307(c) establishes "cause" for dismissal under § 349 and amply justifies

dismissal with prejudice. Because of the Debtor's single-minded intent to avoid payment to the Creditor, I find that a 360 day bar to refiling is justified to prevent the Debtor from making another attempt at delaying or defeating the Creditor's claim to the Judgment.

## IV. Conclusion

For the above reasons, I will enter an order dismissing the Creditor's case with prejudice with a bar from refiling for 360 days.

---

**7.** This Court's authority to dismiss a case with prejudice arises from the same section of the Bankruptcy Code that the Court derives its power to dismiss a case *sua sponte*. 11 U.S.C. § 105(a); *see also Greenberg*, 200 B.R. at 768; *In re Robinson*, 198 B.R. 1017, 1022 (Bankr.N.D.Ga.1996); *In re King*, 126 B.R. 777, 781 (Bankr.N.D.Ill.1991); *Dilley*, 125 B.R. at 197.