# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———————————————

No. 99-6079EA
No. 00-6001EA

———————————————

| | | |
|---|---|---|
| In re: Ronald W. Banks,<br>Debtor. | * | |
| ——————————————— | * | |
| | * | |
| | * | |
| Ronald W. Banks,<br>Debtor-appellant. | * | Appeals from the United States |
| | * | Bankruptcy Court for the |
| | * | Eastern District of Arkansas |
| v. | * | |
| | * | |
| Sandra Vandiver,<br>Creditor-appellee. | * | |
| | * | |

———————————————

Submitted: May 4, 1999
Filed: May 31, 2000

———————————————

Before KOGER, Chief Judge, KRESSEL, and WILLIAM A. HILL, Bankruptcy Judges.

———————————————

WILLIAM A. HILL, Bankruptcy Judge.

Debtor Ronald W. Banks appeals from the bankruptcy court's[1] order determining that he filed his chapter 13 plan in bad faith and from the bankruptcy court's subsequent order of dismissal. We have jurisdiction over these appeals from the final orders of the bankruptcy court. See 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

———————————————

[1]The Honorable Mary D. Scott, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

BACKGROUND

The Debtor, Ronald Banks, was an Air Force pilot and officer for many years. During 20 of those years, he was married to Sandra Vandiver. On May 27, 1982, they dissolved their marriage in the state of California. However, their divorce decree left open the issue of whether Vandiver would later be entitled to a portion of the Debtor's military pension. The Debtor began drawing his military pension in November 1988.

In 1990, Vandiver filed a state court action in Arkansas to determine her entitlement to a portion of the Debtor's military pension. Rather than setting aside the contested portion of the pension money he received, the Debtor spent all the funds "as he saw fit," including paying attorney fees incurred contesting Vandiver's claim. Applying Arkansas law, the state court dismissed Vandiver's suit. However, the Arkansas Court of Appeals reversed the trial court, holding that the law of California–not Arkansas–governed the case. On remand, the state court dismissed the case again, finding that the original California divorce court had made a final adjudication with respect to Vandiver's claim and that Vandiver's suit was barred by res judicata, collateral estoppel, and an applicable California statute of limitations. On appeal a second time, the appellate court again reversed the trial court, holding that no adjudication of Vandiver's claim had occurred in the California divorce proceeding and that Vandiver's lawsuit was not barred by res judicata, collateral estoppel, or the California limitations statute cited by the trial court. After the second appellate ruling in her favor, Vandiver voluntarily nonsuited her case and timely refiled it, claiming her community property interest in the Debtor's military pension benefits as a tenant in common and bringing an action for partition. The case then went to trial. Afterward, the trial court dismissed Vandiver's lawsuit a third time, and Vandiver appealed yet again. On appeal, the Arkansas Supreme Court held that the prior rulings by the Arkansas Court of Appeals were the law of the case and that the trial court erred in dismissing Vandiver's lawsuit and in failing to award Vandiver 37.28 percent of the Debtor's military pension benefits.

Shortly after the Arkansas Supreme Court's decision, the Debtor filed a chapter 13 petition in bankruptcy. At the time of filing, the Debtor was in good financial shape, earning an annual income of approximately $62,000. He had no unsecured debt other than the judgment owed to Vandiver. Indeed, the Debtor had paid off approximately $10,000 in unsecured debt within a few months prior to filing bankruptcy. The only other significant debt the Debtor had was a home mortgage loan guaranteed by the Veteran's Administration. Shortly after the petition was filed, the automatic stay was lifted so that any remaining issues regarding the liquidation of Vandiver's claim could be resolved in state court. The state

court then determined that Vandiver's share of the military pension benefits that had been received by the Debtor was $177,372.83. Vandiver filed a proof of claim that included an unsecured claim for $24,996.85 in attorney fees and costs in addition to a secured claim for $177,372.83–her liquidated portion of the Debtor's military pension–based on an equitable lien or constructive trust.

The Debtor responded by filing an objection to Vandiver's proof of claim, contending that her entire claim was unsecured. In addition, the Debtor proposed an initial chapter 13 plan, and later, a modified plan which treated Vandiver as an unsecured creditor and purported to pay her less than 15 percent of the total amount asserted in Vandiver's proof of claim. The judgment debt owed to Vandiver was the only significant debt to be dealt with under the Debtor's modified three-year plan. Vandiver objected to confirmation of the Debtor's plan, contending, inter alia, that it was not filed in good faith.

On June 29, 1999, the bankruptcy court conducted a hearing on Vandiver's objection to confirmation as well as the Debtor's objection to Vandiver's proof of claim. On September 17, 1999, the bankruptcy court issued an order that sustained the Debtor's objection to Vandiver's proof of claim without prejudice to her filing an adversary proceeding and motion for reconsideration, reasoning that the procedural safeguards attendant a full adversary proceeding would be necessary for the bankruptcy court to impose an equitable lien or constructive trust on the Debtor's property. However, the bankruptcy court also sustained Vandiver's objection to confirmation on the grounds that the plan was proposed in bad faith. The bankruptcy court specifically stated:

> The chapter 13 plan proposes to pay [the Debtor's] unsecured creditors approximately fifteen percent of the debt owed, over a three year period. However, the only unsecured creditor the debtor has is his former spouse. The only debt to be paid pursuant to this plan is a portion of a pension he is required to pay to his former spouse. The debtor admits that he filed this chapter 13 case because he was about to be compelled to pay the long-unpaid benefits. Having been finally ordered by the state Chancery Court to pay the past due amounts to his former spouse, he sought to circumvent the state court's authority and to thwart his former spouse by filing a bankruptcy case and substantially devaluing her claim.
>
> \* \* \* \* \*
>
> This debtor is not in need of bankruptcy relief and filed his chapter 13 plan solely to ensure that his former spouse does not obtain most of the pension money to which she is entitled, but which he chose to spend. The plan proposes to pay his former spouse a meager portion of the amount to which she is not only entitled, but needs. The plan, as such, is not filed in good faith and cannot be confirmed. At minimum, since this debtor filed

a case without either the need for relief from debt or the desire for reorganization, but merely sought to avoid payment of a single debt, any modification which would meet the good faith standard must provide for payment for the entire debt, either in full within the time limits of chapter 13, or provide that repayment of the debt will be a continuing one.

The bankruptcy court's order also provided for automatic dismissal of the bankruptcy case in the event that the Debtor failed to file a plan conforming to the bankruptcy court's decision.

The Debtor filed a motion to amend the bankruptcy court's order of September 17, 1999. By the order dated October 20, 1999, the bankruptcy court granted the Debtor's motion only insofar as removing certain footnotes which were not essential to the court's decision. On December 13, 1999, the Debtor's bankruptcy case was dismissed for failure to file a modified plan conforming to the bankruptcy court's previous decision.

The Debtor appeals from the bankruptcy court's orders of September 17, 1999, October 20, 1999, and December 13, 1999. The Debtor argues that the bankruptcy court clearly erred in making certain findings of fact, including the finding that he proposed his chapter 13 plan in bad faith.

## STANDARD OF REVIEW

On appeal, we review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. Fed. R. Bankr. P. 8013; Hatcher v. U. S. Trustee (In re Hatcher), 218 B.R. 441, 445 (B.A.P. 8th Cir. 1998) (citations omitted); Gourley v. Usery (In re Usery), 123 F.3d 1089, 1093 (8th Cir. 1997); O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997). A fact finding is clearly erroneous when the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. Hatcher, 218 B.R. at 445-46 (citations omitted).

## DISCUSSION

In order to be confirmed, a chapter 13 plan must be proposed "in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). A determination as to whether a chapter 13 plan was proposed in good faith is a finding of fact reviewable under the clearly erroneous standard. Nielsen v. DLC Investment, Inc. (In re Nielsen), 211 B.R. 19, 21 (B.A.P. 8th Cir. 1997); Noreen v. Slattengren, 974 F.2d 75, 77 (8th Cir. 1992); Handeen v. LeMaire (In re LeMaire), 898 F.2d 1346, 1349-52 (8th Cir. 1990).

4

The relevant inquiry regarding good faith is "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." Education Assistance Corp. v. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987). However, the foregoing inquiry is governed by a "totality of the circumstances" test. Noreen, 974 F.2d at 76; LeMaire, 898 F.2d at 1349; In re Estus, 695 F.2d 311, 316 (8th Cir. 1982). Factors which are particularly relevant to determining good faith under the totality of the circumstances include: (1) the nature of the debt sought to be discharged; (2) whether the debt would be dischargeable in a chapter 7 bankruptcy case; and (3) the debtor's motivation and sincerity in seeking chapter 13 relief. LeMaire, 898 F.2d at 1349 (citing Estus, 695 F.2d at 317). See also In re Kurtz, 238 B.R. 826, 830 (Bankr. D.N.D. 1999) ("Further consideration must be given to the sincerity of the Debtor in putting forth his Chapter 13 plan of repayment and whether that plan demonstrates real sincerity on the part of [the Debtor] to repay his creditors as best he can in exchange for the liberal Chapter 13 discharge."). Another relevant factor in determining good faith is the Debtor's pre-filing conduct. LeMaire, 898 F.2d at 1352 (citations omitted). However, even in light of egregious pre-filing conduct by the Debtor, a chapter 13 plan may be confirmed if other factors "suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." Id. (citation omitted).

The bankruptcy court's finding of bad faith is subject to review under the clearly erroneous standard. Although the Debtor contests various subsidiary fact findings, he ultimately fails to show that the bankruptcy court's finding of bad faith was clearly erroneous. For example, the Debtor argues that the bankruptcy court should not have found that he accumulated $107,000 in a savings account, that his demeanor revealed rancor, or that he failed to assist his children in pursuing a college education. Indeed, some of the factual issues raised in the Debtor's argument appear to have only scant relevance to the ultimate finding of bad faith. Nevertheless, the bankruptcy court heard testimony from both sides regarding these factual issues, made its credibility determinations, and based its findings thereon. Determinations as to the credibility of witnesses are uniquely within the province of the trier of fact. Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997) (citing Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Moreover, a court's choice between two permissible views of the evidence cannot be clearly erroneous. Delo, 115 F.3d at 1393-94 (citing Moody v. Proctor, 986 F.2d 239, 241 (8th Cir. 1993)). Accordingly, the Debtor's argument must fail.

Furthermore, there is ample evidence in the record to support the bankruptcy court's finding that the Debtor proposed his chapter 13 plan in bad faith. First, the nature of the debt at issue is closely tied

to the Debtor's pre-filing conduct, and these factors bode against a finding of good faith. The debt in controversy arose out of eight years of bitter litigation in the state courts. Although ownership of a portion of his military pension was in dispute, the Debtor nevertheless spent the entire pension monies he received in complete disregard of the potential consequences for doing so. A possible inference to be drawn from such conduct is that the Debtor *never* intended to pay Vandiver her share of the pension, even if she prevailed in the state court litigation. Indeed, it seems apparent from the record that the Debtor funded his legal battle against Vandiver, at least in part, with pension monies that were ultimately adjudicated to be Vandiver's marital community property. Second, the potential dischargeability of the debt under chapter 7 bodes against a finding of good faith. If the Debtor had filed for protection under chapter 7 of the Bankruptcy Code, it is likely that Vandiver would have had at least a colorable claim for nondischargeability of the debt at issue. See 11 U.S.C. § 523(a)(5), (15). Third, the Debtor's motivation and sincerity in seeking chapter 13 relief bode against a finding of good faith. In this case, the Debtor admitted that his sole motivation for filing bankruptcy was to avoid paying Vandiver on the debt at issue.[2] This admission, combined with the fact that the Debtor proposed only a three-year plan that paid less than 15 percent of Vandiver's claim, supports the bankruptcy court's finding that the Debtor's modified plan was proposed in bad faith as yet one more attempt to deny Vandiver her marital community property interest in the Debtor's pension. See In re Zaleski, 216 B.R. 425, 431 (Bankr. D.N.D. 1997) ("Although . . . the duration of a plan is not by itself indicative of bad faith, it is a factor in gauging the debtor's sincerity where, as here, a three-year plan operates to reduce the return to pre-petition creditors."). Indeed, the Debtor's admitted motivation for seeking chapter 13 relief suggests that his modified plan was proposed

---

[2]Seeking chapter 13 relief to avoid or lessen the effects of state court litigation is not "bad faith constituting unfair manipulation of the Bankruptcy Code" *per se*. Bayer v. Hill (In re Bayer), 210 B.R. 794, 796 (B.A.P. 8th Cir. 1997). Nevertheless, the Debtor's motivation in seeking chapter 13 relief is a factor that must be considered when determining good faith, and where a debtor's behavior exhibits a pattern of manipulation, such conduct should not be rewarded in bankruptcy. See Zaleski, 216 B.R. at 429 ("The [good faith] requirement has at its heart the fundamental notion that bankruptcy is intended to afford the honest but unfortunate debtor the opportunity to gain for himself a fresh start; bankruptcy is not meant to reward the dishonest debtor."). During eight years of state court litigation, the Debtor consciously chose to spend the contested portion of the pension monies he received, thereby manufacturing the debt to Vandiver he now seeks to discharge in bankruptcy. The record indicates that the Debtor was gainfully employed at all times during that period and that it was not necessary for the Debtor to invade the contested portion of his military pension to provide for himself and his two dependents. Thus, the Debtor is not of the "honest but unfortunate" variety that the Bankruptcy Code was intended to protect, and his conduct in this case allows an inference of dishonest manipulation to be drawn.

not with the intention of satisfying Vandiver's claim to the greatest extent possible, but with the intention of *avoiding* payment of that claim to the greatest extent possible, and the meager repayment percentage proposed by the Debtor's plan supports this conclusion. Such a purpose is the antithesis of good faith in the context of chapter 13. Since there is no strong evidence of good faith on the part of the Debtor, we are not left with a definite and firm conviction that a mistake has been committed. Therefore, the bankruptcy court's finding that the Debtor proposed his modified chapter 13 plan in bad faith is affirmed.

Finally, the bankruptcy court dismissed the case based on the Debtor's failure to file a new modified plan satisfying the good faith requirement of 11 U.S.C. § 1325(a)(3). The bankruptcy court's dismissal of the case was correct and is hereby affirmed as well.

## CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court in all respects.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT