**In re John Thomas MCGOVERN, Debtor.**

No. 02–80965–CIV.

United States District Court, S.D. Florida.

Aug. 20, 2003.

Robert Cyril Widman, Morris, Widman & Keim, Venice, FL, Joseph W. Little, Gainesville, FL, for appellant.

James Earl Copeland, Cohen, Conway, Copeland, Klett, et al., Palm Beach Gardens, FL, for appellee.

## MEMORANDUM OPINION

HURLEY, District Judge.

Charles Grapski ("Grapski" or the "Creditor") appeals from a bankruptcy court order denying his motion to dismiss the Debtor's Chapter 13 case for lack of good faith, and approving the Debtor's third amended reorganization plan. For reasons which follow, this court vacates the bankruptcy court order and remands this case for further findings on the issues of whether the Debtor filed his Chapter 13 petition and plan in good faith.

### Background

John Thomas McGovern ("McGovern" or the "Debtor") filed his Chapter 13 petition on September 5, 2001, and his Chapter 13 plan on October 14, 2001, listing $7,701.19 in assets and $226,337.16 in liabilities. The bulk of the liabilities are associated with a state court judgment in favor of Grapski, and legal expenses relating to the defense of that claim and appeal of judgment. The Debtor himself testified that approximately eighty to ninety percent of his debt relates to the Grapski litigation. The percentage of potentially *dischargeable* debt related to the state court judgment may fall closer to the high end or exceed this range: Excluding the non-dischargeable student loan owed to the U.S. Department of Education in the amount of $ 42,502.70,[1] the remaining scheduled potentially dischargeable debt of $183,834.46 breaks down into $7,748.00 of credit card debt unrelated to the Grapski litigation[2] and approximately $176,084.00

---

1. Under 11 U.S.C. § 1328(a)(2), debts incurred as result of government backed or funded student loans are specifically exempted from dischargeable debts under Chapter 13.

2. The Debtor testified at initial confirmation hearing that one MBNA credit card carrying approximate balance of $10,000 represented Grapski litigation related legal expenses, and the other MBNA card, scheduled as showing an approximate balance of $ 6000 represent-

of Grapski-related debt[3]—roughly 96 % of the Debtor's total scheduled potentially dischargeable debt.

The petition lists no unsecured priority claims, and only one creditor holding a secured claim, Audi Financial Services, stemming from a lease on a luxury automobile, a 2001 Audi A6, which the Debtor assumed approximately two months before filing his petition.

Grapski filed a $97,053.00 proof of claim based on a $80,880.00 judgment entered in his favor in December 1999, the same month the Debtor graduated from law school at the University of Florida. In the state court suit, Grapski sued McGovern for defamation, alleging that McGovern falsely accused him of being a convicted child molester as part of a political smear campaign designed to destroy Grapski's candidacy for student president at the University of Florida in the mid–1990's when both were undergraduate students at that institution.

The defamation suit culminated with a jury verdict in Grapski's favor in the amount of $250,000.00 in June, 1998. Upon defense motion, the verdict was remitted to $150,000.00. Following a later $85,000 settlement paid by a codefendant, Florida Blue Key, judgment in the amount of $80,880.00, representing the remaining principal liability on the judgment, inclusive of prejudgment interest and costs, entered against McGovern on December 14, 1999. That judgment was affirmed on appeal, *McGovern v. Grapski*, 793 So.2d 935 (Fla. 1st DCA 2001), and post judgment proceedings in aid of execution ensued.

On the day before his scheduled deposition in aid of execution, the Debtor filed his Chapter 13 petition. Grapski moved to dismiss the Chapter 13 petition on the ground that the Debtor's petition and plan were not filed in good faith. Following hearing held April 8, 2002, at which the Debtor testified as sole witness, the bankruptcy court entered its order dated May 24, 2002, denying the motion to dismiss, but sustaining the Creditor's objections to confirmation of the plan, with leave for the Debtor to file an amended Chapter 13 plan. *In re McGovern*, 278 B.R. 888 (Bankr.S.D.Fla.2002). The Debtor thereafter filed an amended plan, and Grapski renewed his motion to dismiss and objections to confirmation of the plan.

---

ed a combination of Grapski related legal expenses in addition to other minor miscellaneous charges. His remaining scheduled credit card debt amounts to approximately $7748.89, consisting of direct department store credit card debt and other general credit card debt which he identified as unrelated: $120.96 to Burdines; $215.33 to Capital One; $52.17 to Dillards; $92.56 to Macy's; $4420.06 to Providian Visa; $2547.59 to Sears; and $300.22 to Syms.

**3.** The Grapski related unsecured debts consist of a scheduled liability of $80,880.00 owed to Grapski as judgment creditor; $40,000.00 owed to the debtor's parents pursuant to an undocumented loan for related attorneys' fees; $15,000.00 owed to Attorney Edna Caruso; $20,574.27 owed to the law firm of Fowler White Burnett; $10,213.43 owed on a first MBNA America credit card which the Debtor identified as related litigation expenses, and $6,417.49 owed on a second MBNA America credit card which the Debtor identified as primarily litigation related. In making these apportionments, the court is including in the Grapski-related debt figure a "potential claim" on a promissory note in the amount of $3000.00 (contingent, unliquidated) scheduled in favor of Marvin and Donna Shlensky of Westmont, Illinois. It is not clear from the debtor's testimony that this is a related litigation debt, but this liability was not mentioned in the list of unrelated debts which were itemized during his testimony. (Transcript of April 8, 2002 hearing on Creditor's objections to confirmation and motion to dismiss, p. 63).

On July 25, 2002, the bankruptcy court conducted a hearing on the Debtor's proposed third amended plan and Grapski's renewed motion to dismiss and objections to the plan. Grapski was sworn as a witness, seeking to proffer testimony relating to the circumstances relating to the underlying debt and the Debtor's pre-petition conduct toward this Creditor for the stated purpose of showing that the Debtor's petition and plan were not filed in good faith. The bankruptcy court sustained the Debtor's objections to the relevancy of this testimony, holding that the pre-petition behavior of the Debtor, while "despicable," was ultimately irrelevant to the assessment of good faith in a Chapter 13 proceeding:

> I'm going to rule that I'm not going to allow Mr. Grapski to testify as to the prior course of conduct, and I'm going to state my reasons, if I may. I believe that under the present enactment of the Bankruptcy Code, a debt, such as the debt that was incurred by Mr. McGovern to Mr. Grapski, which would be non-dischargeable in a Chapter 7 proceeding, and which fact was stipulated to at the commencement of this first hearing in this case, can be discharged in a Chapter 13 proceeding, a debt incurred as a result of willful and malicious injury, a debt that would otherwise be non-dischargeable under Section 523(a)(6) if this was a Chapter 7 proceeding. Thus, I believe that any inquiry into the history of the relationship between Mr. Grapski and Mr. McGovern is largely, if not wholly, superfluous.
>
> . . . .
>
> I don't think it's relevant or admissible to examine the debtor's prior bad conduct or bad acts.

. . . .

I construe Section 1325(a)(3) which reads that in order for a plan to be confirmed, the plan must be proposed in good faith, and not by any means forbidden by law, as referring to the conduct of a debtor during the course of a Chapter 13 case, and his conduct, vis-a-vis the Court, and the papers he files with this court.

On August 14, 2002, the bankruptcy court issued its order confirming the Debtor's third amended Chapter 13 plan, citing *In re Lilley,* 91 F.3d 491 (3d Cir.1996) and *In re March,* 83 B.R. 270 (Bankr.E.D.Pa. 1988) for the proposition that the exceptions to dischargeable debt enumerated in § 1328(a)(2) are exclusive in a Chapter 13 proceeding. Under the confirmed third amended plan, the Debtor is required to make monthly payments totaling $50,847.84 over a period of 51 months.[4] This encompasses a total payment of $19,656.00 to Grapski, constituting approximately 20% of the original debt owed to him.

Notably, at the time of confirmation, the Debtor was newly employed as an associate attorney at the prestigious law firm of Montgomery & Larson in West Palm Beach, earning a base salary of $75,000.00 per annum, with an expectation of variable annual bonuses payable at the discretion of his employer. In the year 2001, by way of example, his first full year of employment as an associate attorney, he generated an aggregate of $15,000.00 in bonus payments.

On appeal of the bankruptcy court order denying his motion to dismiss and overruling his objections to confirmation of the Debtor's third amended plan, the Creditor

---

**4.** $650.00 per month for the first ten months; $1070.30 for months 11 through 15, and $1391.50 for months 16–51.

urges that the bankruptcy court erred in formulation of the legal criteria applicable to the determination of good faith in the filing of the Debtor's petition and plan, erred by excluding consideration of the Debtor's pre-filing conduct in making its good faith determinations, and consequently erred in concluding that the petition and plan were filed in good faith.[5]

### Standard of Review

A district court reviews a bankruptcy court's fact findings for clear error, while legal conclusions are reviewed *de novo.* *In re Optical Technologies,* 246 F.3d 1332 (11th Cir.2001); *In re Thomas,* 883 F.2d 991 (11th Cir.1989); Fed. R. Bankr.P. 8013. A factual finding is "clearly erroneous" when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed, even though there is some evidence to support it. *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), *quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Under this standard, the reviewing court may not reverse simply because it takes a different view of the evidence or would have decided the case differently, but this deference is not unlimited: The court may consider documents or objective evidence which contradict a witness' story, or take notice that a story is internally inconsistent or so facially implausible that a reasonable fact finder would not credit it. *Id.* at 574–575, 105 S.Ct. 1504.

The determination of a debtor's good faith in proposing a Chapter 13 plan

is deemed a factual finding reviewable under the clearly erroneous standard. *Handeen v. LeMaire,* 898 F.2d 1346, 1350 (8th Cir.1990). Questions regarding interpretation of the Bankruptcy Code, like any other question of statutory interpretation, in contrast, are questions of law which are properly reviewed *de novo. In re Hart,* 328 F.3d 45 (1st Cir.2003); *In re Kolich,* 328 F.3d 406 (8th Cir.2003); *In re BCE West, LP,* 319 F.3d 1166 (9th Cir.2003); *In re Morgan,* 182 F.3d 775 (11th Cir.1999).

Accordingly, in this case, the court reviews *de novo* the bankruptcy court's threshold legal interpretation of the Chapter 13 "good faith" requirements, and reviews the bankruptcy court's factual findings under the clearly erroneous standard, as developed in *Anderson,* in order to determine whether McGovern filed and proposed his Chapter 13 plan in good faith.

Having done so, the court concludes that the bankruptcy court erred as a matter of law in formulating a "totality of circumstances" approach which excluded any consideration of the Debtor's pre-petition behavior, particularly as it relates to the Debtor's dealings with Grapski, his primary unsecured creditor, and other circumstantial evidence bearing on the Debtor's intent in proceeding under Chapter 13. Based on the record before the bankruptcy court, this court is left with the "definite and firm conviction" that a mistake was committed by the bankruptcy court in finding that the Debtor satisfied the "good faith" requirements of Chapter 13 under the circumstances of this particular case.

### Analysis

The obligation of good faith is imposed on the debtor in a Chapter 13

---

5. The Creditor also assigns as error the confirmation of a plan which permits the Debtor to include political contributions as expenses and which fails to require the Debtor to pay all of his disposable income into the plan

during the required payment period. Because the court finds it necessary to remand on the good faith issues, it is unnecessary to reach the merits of these objections.

proceeding in two stages: First, the debtor must file his Chapter 13 *petition* in good faith. This flows from the concept that the filing of a Chapter 13 petition in bad faith may constitute cause for dismissal under 11 U.S.C. § 1307(c). *See In re Love*, 957 F.2d 1350, 1354–55 (7th Cir. 1992); *In re Gros*, 173 B.R. 774 (Bankr. M.D.Fla.1994); *In re Bandini*, 165 B.R. 317, 319 (Bankr.S.D.Fla.1994). Second, the debtor must file his Chapter 13 *plan* in good faith: A showing of "good faith" is statutorily required for the confirmation of a Chapter 13 plan. 11 U.S.C. § 1325(a)(3). *See In re Love, supra; In re Elisade*, 172 B.R. 996 (Bankr.M.D.Fla.1994).

▆ The inquiry into whether a Chapter 13 debtor filed his petition in good faith and the inquiry into whether the debtor filed his Chapter 13 plan in good faith are both conducted on subjective and objective bases, and the same evidence may be relevant to both inquiries. *First United Sav. Bank v. Edwards*, 184 B.R. 46 (S.D.Ind. 1995).

Although this pervasive element of "good faith" is described as "one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case," *In re Kull*, 12 B.R. 654, 658 (S.D.Ga.1981), *aff'd sub. nom, In re Kitchens*, 702 F.2d 885 (11th Cir.1983), the concept of "good faith" is not defined in the Code or its legislative history. Left with the interpretational task, courts have generally held that "good faith" in this context is to be determined on a case by case basis, under a "totality of the circumstances" test which requires consideration of a broad range of objective and subjective factors, critically including, *inter alia*, examination of the debtor's intent and motivation in proceeding under Chapter 13, largely following the approach outlined by the Eighth Circuit's seminal decision, *In re Estus*, 695 F.2d 311 (8th

Cir.1982). *See In re Kitchens*, 702 F.2d 885, 888–889 (11th Cir.1983); *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 432 (6th Cir.1982); *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983); *Flygare v. Boulden*, 709 F.2d 1344, 1347 (10th Cir. 1983); *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982); *In re Rimgale*, 669 F.2d 426, 432–33 (7th Cir.1982).

Under the Eleventh Circuit's "totality of circumstances" approach outlined in *Kitchens*, the relevant criteria for evaluating "good faith" in a Chapter 13 proceeding are defined to include, without limitation:

(1) amount of debtor's income from all sources;

(2) living expenses of the debtor and his dependents;

(3) amount of the attorney's fees;

(4) probable or expected duration of the debtor's Chapter 13 plan;

(5) motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and likelihood of fluctuation in his earning;

(8) special circumstances such as inordinate medical expense;

(9) frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan administration would place on the trustee;

(12) the type of debt to be discharged and whether such debt would be nondischargeable under Chapter 7;

(13) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court;

(14) extent to which the claims are modified and extent of preferential treatment among classes of creditors.

*In re Kitchens,* 702 F.2d 885, 888–889 (11th Cir.1983).

After *Estus,* the Bankruptcy Code was amended in 1984 to add a new section § 1325(b) authorizing courts to confirm a plan in which all of the debtor's disposable income for three years is applied to payments under the plan and incorporating a definition of "disposable income." While acknowledging the effect of the amendment as one which narrows the focus of the good faith inquiry on *Estus* "ability to pay" considerations, the Eighth Circuit preserved its traditional totality approach with regard to other *Estus* factors not addressed by the legislative amendments. *Education Assistance Corp. v. Zellner,* 827 F.2d 1222 (8th Cir.1987).

In a more recent treatment of the subject, the Eighth Circuit reaffirmed its adherence to this broad "totality of circumstances" approach to specifically permit examination of the type of debt sought to be discharged, including its non-dischargeability in Chapter 7, a factor which logically relates to the debtor's intent and motivation in proceeding under Chapter 13. *See In re LeMaire,* 898 F.2d 1346, 1348–49 (8th Cir.1990)*(en banc )*(recognizing that civil judgment arising from criminal act was not *per se* precluded from discharge under Chapter 13, but record did not support finding of good faith where conduct of debtor, including his pre-filing conduct, raised a question on issue of debtor's motivation and efforts at unfairly manipulating the bankruptcy code).

The Seventh Circuit fashioned a similar approach in synthesizing the 1984 amendments into its traditional "totality of circumstances" analysis, *In re Smith,* 848 F.2d 813 (7th Cir.1988)(acknowledging impact of 1984 amendments on defining disposable income and allowing discharge without commitment of specific amount or percentage of payments to unsecured creditors, while affirming totality approach), and other circuits have continued to apply a multifactor *Estus*-style approach which includes examination of debtor pre-petition and post-petition behavior. *See e.g., In re Young,* 237 B.R. 791, 798 (10th Cir. BAP 1999); *In re Solomon,* 67 F.3d 1128 (4th Cir.1995); *In re Gier,* 986 F.2d 1326 (10th Cir.1993); *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir.1988); *Public Fin. Corp. v. Freeman,* 712 F.2d 219 (5th Cir.1983); *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986); *In re Doersam,* 849 F.2d 237 (6th Cir.1988).

The Third Circuit approached the equation somewhat differently: In *In re Lilley,* 91 F.3d 491 (3d Cir.1996), it likewise narrowed the *Estus* multifactor focus in light of the 1984 Code amendments, but at the same time, opted to eliminate the often cited *Estus* factor concerning Chapter 7 nondischargeability, simply finding it to conflict with the broad discharge expressly granted under § 1328(a) of Chapter 13. The First Circuit Bankruptcy Appellate Panel initially embraced this conclusion, also breaking rank with the majority circuit view, holding that "good faith" under Chapter 13 is "simple honesty of purpose," and rejecting as "moralistic" the prevailing view of good faith which permits broader inquiry into the debtor's pre-filing conduct and its impact on the dischargeability of the debt under Chapter 7 as inconsistent with the broad statutory discharge available under Chapter 13. *In re Keach,* 243 B.R. 851 (1st Cir. BAP 2000).

However, individual members of the bankruptcy appellate panel deciding *Keach* later expanded the definition of good faith in a Chapter 13 proceeding to specifically include consideration of both pre-petition and postpetition conduct of the Debtor as circumstantial evidence of the debtor's motivation in seeking Chapter 13 relief. *See In re Fleury,* 294 B.R. 1 (Bankr.D.Mass. 2003), *citing In re Scotten,* 281 B.R. 147, 149 (Bankr.D.Mass.2002) and *In re Virden,* 279 B.R. 401, 407 (Bankr.D.Mass.2002)("bottom line" in determining good faith in a debtor's filing is "whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability.") The bankruptcy appellate panel of the First Circuit has since implicitly affirmed the continued vitality of a totality of circumstances approach which allows consideration of pre-petition behavior in approving a bankruptcy court decision based on such an analysis, thereby limiting, if not eliminating, the teachings of *Keach* in this regard. *See In re Cabral,* 285 B.R. 563 (1st Cir. BAP 2002).

■ Following the prevailing post–1984 "totality of circumstances" approach fashioned by the Eighth Circuit in *Zellner* and *LeMaire,* this court agrees with the current majority view that "good faith" analysis in Chapter 13 context requires consideration of both pre-petition and post-petition behavior, and specifically rejects the *Lilley* and *Keach* premise that the 1984 amendments to the Code eliminate consideration of the nondischargeability of a particular debt under Chapter 7, or other pre-petition behavior of the debtor

bearing on his intent in proceeding under Chapter 13. *See In re Sellers,* 285 B.R. 769 (Bankr.S.D.Ga.2001). That is, a Chapter 13 "good faith" analysis still properly entails examination of the type of underlying debt, the circumstances surrounding its creation, and any pre-petition conduct of the debtor aimed at avoiding or thwarting the debt, especially as these factors may circumstantially reflect the debtor's motivation, and ultimately his "good faith," in filing under Chapter 13. *See In re Cabral,* 285 B.R. 563 (1st Cir. BAP 2002); *In re Fleury,* 294 B.R. 1 (Bankr.D.Mass. 2003).

This view most logically fits the Chapter 13 analytical paradigm: If the basic purpose and spirit of Chapter 13 is rehabilitation and repayment of debt by periodic payments made to a trustee under bankruptcy court protection, with the aim of providing honest, unfortunate and genuinely financially distressed debtors an opportunity to obtain a fresh start, 11 U.S.C. § 1301; *In re Waldron,* 785 F.2d 936 (11th Cir.1986), and good faith is defined as the absence of an abuse of that intent and purpose, *State Educational Assistance & Authority v. Johnson,* 43 B.R. 1016 (E.D.Va.1984), the court's inquiry should logically bear closely on those *Kitchens (Estus)* factors which implicate the debtor's motivation in proceeding under Chapter 13. *See* Mark E. Roszkowski, *Good Faith and Chapter 13 Plans Providing for Debts Non dischargeable under Chapter 7 of the Bankruptcy Code: A Proposal to Assure Rehabilitation, Not Liquidation,* 46 Bus. Law 67 (Nov.1990).[6] If these fac-

---

**6.** This commentator urges isolation of the *Estus* factors relevant to the central intent inquiry as the exclusive focus of the analysis, thereby channeling the examination toward:

(1) type of debt, including inquiry into whether it is a nondischargeable Chapter 7 debt and whether it represents the bulk of the debt sought to be discharged, with the presence of a single or primary creditor holding a judgment nondischargeable debt under Ch. 7 potentially implicating a debtor intent to avoid rather than repay the debt. *See e.g. In re Gier,* 986 F.2d 1326 (10th Cir.1993); *In re Fleury,* 294 B.R. 1 (Bankr.D.Mass.2003); *In*

tors point to an intent to achieve debt relief or debt avoidance—the purposes of Chapter 7–rather than debt rehabilitation or debt payment—the purposes of Chapter 13—this tends to evince a lack of the requisite good faith for obtaining Chapter 13 bankruptcy court protection. *Id.*

### *Application*

■ After considering these factors and reviewing the bankruptcy court's findings here, this court is compelled to conclude that the bankruptcy court's finding of good faith in the filing of the debtor's petition and plan was clearly erroneous. The undisputed facts indicate that McGovern was adjudicated guilty in a state court of competent jurisdiction of defaming Grapski with a false charge of child molestation in the course of a student government electoral campaign, and that McGovern never made any payments towards satisfaction of the $80,880.00 judgment entered against him prior to filing his Chapter 13 petition, instead opting to seek the protection of bankruptcy court the day before his compelled appearance at his deposition in aid of execution on the state court judgment. He borrowed $40,000 from his parents, on an undocumented loan, for attorneys fees to litigate the Grapski matter, and has no other substantial dischargeable liabilities other than the combined $30,000 in Grapski litigation re-

lated attorneys fees still owed to the law firms of Fowler White Burnett and Edna Caruso. There was no evidence that any other creditor except Grapski was taking or threatening legal action to collect the debts scheduled by the petition.

The bankruptcy court found other circumstances surrounding the Debtor's filing to be "troubling," noting the debtor's assumption of a lease on a new luxury vehicle some two months prior to filing, the timing of the filing to coincide with his scheduled deposition in aid of execution, and his failure to include or refer to a $10,000.00 employment bonus received at the time of filing in his Statement of Financial Affairs.[7] With this background, viewed against the proffered 11% return to unsecured creditors over a thirty-six month term promised by the Debtor's initially proposed plan—the bankruptcy court acknowledged the existence of "considerable factors to support a finding that the debtor filed his petition in bad faith," ultimately prompting it "to suspect that the Debtor's true motivation in filing his petition is to pay Grapski as little as possible." *In re McGovern,* 278 B.R. 888, 893 (Bankr. S.D.Fla.2002).

■ Still, the bankruptcy court found "countervailing indicia of good faith" to be persuasive, finding in this regard that the Debtor had dealt candidly with the bank-

*re Virden,* 279 B.R. 401 (Bankr.D. Mass 2002); *In re Ramji,* 166 B.R. 288, 290 (Bankr. S.D.Tex.1993);

(2) prior efforts at repayment, with lack of any effort to pay suggestive of intent to avoid rather than repay debts. *See In re Mattson,* 241 B.R. 629, 634 (Bankr.D.Minn.1999)(dismissing case with prejudice, where pre-petition debtors did everything in their power to stall and avoid payment to only creditor of substance);

(3) timing of filing of Chapter 13 petition, with filing in close proximity to entry of judgment or collection efforts against debtor sug-

gestive of intent to avoid rather than repay debt;

(4) employment history and future earning prospects of the debtor, with debtor reluctance to commit predictable future increases in income tending to evince intent to avoid, rather than repay, debt where the debtor enjoys a particularly bright employment future.

7. The Debtor testified at initial confirmation hearing that he received this bonus either on the afternoon he signed the schedules in his attorney's office or the very next day. (Transcript of April 8, 2002 hearing, p. 55).

ruptcy court in proceedings before it, appeared "contrite" about the circumstances giving rise to the Grapski debt, and motivated to get a "fresh start" through bankruptcy protection.

██ However, these findings do not equate with "good faith" as that term is used in this context. The debtor's contriteness over the original wrong to Grapski has little bearing on his intent in proceeding under Chapter 13: Since lack of good faith does not require malfeasance, malice, ill will, or fraudulent intent toward creditors, *see In re Eisen,* 14 F.3d 469 (9th Cir.1994); *In re Waldron,* 785 F.2d 936 (11th Cir.1986); *SouthTrust Mobile Services, Inc. v. Englebert,* 137 B.R. 975 (N.D.Ala.1992), the debtor's degree of honest sorrow over his past behavior is largely beside the point. The pertinent question is not whether he is now sorry for what he did to Grapski, but whether he is intent on repaying Grapski as much as possible in a genuine effort at rehabilitation, or as little as possible in an effort to thwart and avoid a legitimate debt.

██ The bankruptcy court made findings consistent with debt-avoidance motivation which would appear to advance the latter conclusion, but was "reluctant" to deny the Debtor a discharge on stated ground that he seemed genuinely motivated to obtain a "fresh start" in proceeding under Chapter 13, even though his initially proposed plan did not provide the "substantial repayment" of debt required to

achieve this goal, 278 B.R. at 893–894. Significantly, the bankruptcy court appears to have reached this conclusion under the erroneous assumption that the Debtor's pre-petition relationship and dealings with Grapski were not permissible considerations in addressing the good faith issue under Chapter 13.[8]

██ All debtors seeking bankruptcy protection are presumably motivated, at least in part, by a desire to get a "fresh start." The central and more pertinent inquiry, not adequately addressed by the bankruptcy court here, is whether the debtor came to bankruptcy court seeking a fresh start under Chapter 13 protection with an intent that is consistent with the spirit and purpose of that law—rehabilitation through debt repayment—or with an intent contrary to its purposes—debt avoidance through manipulation of the Code.

The bankruptcy court either failed to discuss or gave insufficient weight to the various *Kitchens* factors which directly bear on this central issue of intent. The court is particularly troubled in this regard by the bankruptcy court's implicit adoption of the incorrect exclusionary rule, eschewing "any inquiry into the history of the relationship between Mr. Grapski and Mr. McGovern" as "largely, if not wholly, superfluous." In confirming the debtor's third amended plan, the bankruptcy court announced that "the court's only inquiry is to determine whether the debtor seeks to

---

8. On remand, the pre-filing dealings between the parties and the circumstances surrounding the underlying debt may be explored and considered by the bankruptcy court in its reassessment of Debtor good faith; however, while the bankruptcy court is thus invited to examine the "circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors," as directed by *Kitchens,* this direction does not signal an opportunity for the Debtor to re-open the liabilities assessed by state court judgment, which is now entitled to *res judicata* effect. *Cf. Bayer v. Hill,* 210 B.R. 794 (8th Cir. BAP 1997)(remanding Chapter 13 case for evidentiary hearing to determine if claimant's allegations of sexual battery against debtor had basis in fact, where state court case was pending and there was no adjudication of culpability by state court of competent jurisdiction at the time of filing).

abuse the bankruptcy law by employing it for a purpose for which it was not intended." This is indeed a central Chapter 13 inquiry, but it cannot properly be answered without consideration of pre-filing conduct of the debtor and other *Kitchens* factors which may constitute strong circumstantial evidence bearing upon the issue.

■ For example, in this case, Grapski contends that McGovern threatened to file bankruptcy to avoid paying Grapski on the defamation claim as early as 1998. If true, this type of evidence is strongly indicative of debtor intent at judgment avoidance—a core or classic form of "bad faith" contrary to the spirit and purpose of Chapter 13— which should have been considered by the bankruptcy court as relevant pre-filing conduct bearing on the issue of debtor intent and motivation. *See In re Banks*, 248 B.R. 799 (8th Cir. BAP 2000), *aff'd* 267 F.3d 875 (Chapter 13 plan proposed in bad faith where subject debt arose from eight years of bitter litigation in state courts, and debtor admitted motivation for filing was to avoid paying); *In re Larson*, 245 B.R. 609 (Bankr.D.Minn.2000)(Chapter 13 plan not proposed in good faith where debt to judgment creditor, constituting more than 98% of claims, would likely be nondischargeable as debt incurred by fraud, debtor would not have been in need of bankruptcy relief but for that judgment, and it appeared debtor filed in order to forestall legal action against wife); *In re Baird*, 234 B.R. 546 (Bankr.M.D.Fla.1999)(Chapter 13 plan lacking in good faith where debtor had little need of Chapter 13 to protect assets, which were few in number, or to repay debts, and was apparently using Chapter 13 to discharge judgment debt which likely would have been excepted from Chapter 7 discharge as based on fraud, conversion and civil theft); *In re Georgeff*, 218 B.R.

403 (Bankr.S.D.Ohio 1998)(debtor-attorney did not demonstrate requisite good faith in attempting to use Chapter 13 to thwart judgment creditor-former client's effort to collect judgment); *In re Norwood*, 178 B.R. 683 (Bankr.E.D.Pa.1995). *See also In re Love, supra* (pre-petition tax protest activity of the debtor, which led to the primary source of his debt, supported finding that he filed Chapter 13 petition without good faith in order to avoid portion of his federal tax liability).

The record here is strongly indicative of such an intent which the bankruptcy court failed to adequately explore and factor into its Chapter 13 good faith analysis, leaving this court with "the definite and firm conviction that a mistake has been committed."

### *Conclusion*

■ The court recognizes that Congress intentionally expended the scope of a debtor's discharge in Chapter 13 proceeding in order to "encourage more debtors to attempt to pay their debts under bankruptcy court supervision.'" *In re Estus*, 695 F.2d 311, 313 (8th Cir.1982). It also recognizes that a Chapter 13 debtor's attempt at discharge of an otherwise nondischargeable debt under Chapter 7 will not in itself justify a finding of bad faith; however, this factor does merit heightened judicial scrutiny of the debtor's intent in filing and proposing his Chapter 13 plan.

Because the record in this case does not support a finding of the requisite good faith, but instead contains evidence and findings which strongly suggest a judgment avoidance motivation that is inconsistent with the policies which Chapter 13 seeks to advance, this court shall reverse the bankruptcy court's order denying the Creditor's motion to dismiss and confirming the Debtor's third amended plan, and remand the matter to the bankruptcy

court for further proceedings consistent with this opinion. *See Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986); *In re Goddard,* 212 B.R. 233 (D.N.J.1997)(same).

Accordingly, the order of the bankruptcy court denying the Creditor's motion to dismiss and order confirming the third amended Chapter 13 plan are **VACATED,** and this case is **REMANDED** to the Bankruptcy court for further findings on the issue of whether the Debtor filed and proposed his Chapter 13 plan in good faith.